(C. D. 1938)

ATLANTA UNIVERSITY v. UNITED STATES

United States Customs Court, Second Division

(Decided November 19, 1957)

Plaintiff not represented by counsel.

George Cochran Doub, Assistant Attorney General (Daniel I. Auster and Alfred A. Taylor, Jr., trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An imported Westminster striking mechanism with gear and four hammers which comprises the subject merchandise

was classified by the collector of customs as "CLOCK PARTS, SUB ASSEMBLIES" within the purview of paragraph 368 (c) (3) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (c) (3)), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T. D. 52820, and duty was imposed thereon at the rate of 1½ cents for each part or piece, plus 32½ per centum ad valorem.

Plaintiff, by its timely protest, contends that said importation should properly have been classified as parts of chimes in paragraph 1541 (a) of said act (19 U. S. C. § 1001, par. 1541 (a)), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, for which duty at the rate of 15 per centum ad valorem is provided.

The pertinent provisions of the respective paragraphs are here set forth.

Paragraph 368 (c) (3) of said tariff act, as modified, *supra*—

368 (a)  Clocks, * * *
(1) (2)
  *    *    *    *    *    *    *
368 (c)  Parts for articles provided for in paragraph 368 (a), Tariff Act of 1930, shall be dutiable as follows:
  *    *    *    *    *    *    *
 (3)  Each assembly or subassembly * * * consisting of two or more parts or pieces of metal or other material joined or fastened together, intended or suitable for any article provided for in item 368 (a) (1) (2) in this Part_____ 12½¢ for each jewel, if any, and 1½¢ for each other part or piece and 32½% ad val.

Paragraph 1541 (a) of said act, as modified, *supra*—

Musical instruments and parts thereof, not specially provided for * * *:
  *    *    *    *    *    *    *
 Percussion instruments:
  Sets of tuned bells of the types known as chimes or peals, and parts thereof_____ 15% ad val.

The record before the court upon which decision of the issue presented must be based consists of the testimony of Rufus E. Clement, president of Atlanta University, who testified on behalf of plaintiff, and defendant's collective exhibits A, B, and C. Exhibit A is a letter, dated March 12, 1957, addressed by the customs agent in charge at Savannah, Ga., to the collector of customs at that port, reporting on an interview had by the customs agent in charge with Rufus E. Clement, president, and J. B. Shepherd, chief engineer, of

Atlanta University. Exhibit B consists of six photographs of the instrument involved and some of the connecting apparatus of bells used in connection therewith. Exhibit C is a document termed an "order," but which appears to be an estimate or offer for the purchase of the initial importation of the chimes with which the present striking mechanism is to be used.

It appears from the record that a chime of 10 bells, complete with clappers, suspensions, frame, connections, keyboard, 4 dials, and 4 pairs of hands with motor-driven work, electrical illumination, motor-driven striking gear, and hammer for the largest bell, was ordered from Eijsbouts-Lips, Ltd., of Asten, Netherlands, shipped to the United States, and installed at Atlanta University, Atlanta, Ga. Through some misunderstanding between the purchaser and seller, a Westminster striking mechanism with striking gear and four hammers was not included in said shipment, but subsequently was separately ordered shipped to this country, and, due to a difference of opinion between the collector of customs and the importer as to its dutiable classification, is now in issue.

The Westminster striking mechanism consists chiefly of four electric switches which control the time of striking, namely, on the quarter hour, half hour, three-quarter hour, and on the hour, an electric motor, a set of four discs with cams, and four hammers or clappers. At the various times mentioned above, the electric switches are closed, thereby completing an electrical circuit to the electric motor which is connected to the discs. The electric motor causes the discs with the cams to rotate and the cams activate a lever which, in turn, causes the hammers to strike the bells. The striking mechanism is installed on a platform below the clock and the system of bells in the clock tower. Said mechanism cannot be operated without the clock, inasmuch as it is the movement of the clock which causes the electric impulses that activate the striking mechanism. The only connection between the striking mechanism and the clock is the various electrical connections between the clock mechanism and the electric switches of the striking mechanism. The entire installation with which the imported articles are used consists of a clock mechanism, a series of bells, a striking mechanism, a chime mechanism, and a carol mechanism, the last named functioning by means of a manually operated keyboard for the purpose of playing carols. The bells are installed in the clock tower in a fixed position, and the musical notes produced by them are accomplished merely by the hammers and the striking mechanism striking the bells.

The Westminster striking mechanism cannot operate on its own, but operates by means of the clock and of the bells. Whereas the clock itself would indicate the time without the striking mechanism, the latter would not operate unless it is connected with the impulses

which operate the clock. In answer to a question by Government counsel, plaintiff's witness, Clement, stated that the striking mechanism in and of itself is not a musical instrument.

It is the contention of the defendant in its brief that plaintiff cannot succeed in its claim by virtue of the fact that it is admitted that the imported striking mechanism is not in and of itself a musical instrument and, for the further reason, that an examination of defendant's collective exhibit B discloses that the imported striking mechanism does not contain any set of tuned bells of the types known as chimes or peals.

We are not in accord with that argument. We do not understand the plaintiff as claiming that the Westminster striking mechanism with striking gear and four hammers in and of itself is a musical instrument of the type known as chimes, but rather that it is a part thereof. Moreover, it is irrefutable that parts of chimes are parts of musical instruments since the tariff act designates them as such.

It seems to us that, for chimes to be musical instruments within the purview of the tariff act, it is essential that there be incorporated therewith a means of functioning. In the instance of the chimes installed at Atlanta University, it appears from the record that they may function either by a manually operated keyboard for the purpose of playing carols or by the mechanical means provided by the present importation which receives its electrical impulses from the tower clock on the quarter-hour periods above indicated. Said electrical impulses cause the closing of a switch, thereby completing a circuit to the electric motor of a striking mechanism, and the electric motor, in turn, causes the discs with cams to turn, thereby operating a lever which causes the hammers to strike the bells.

In the New International Encyclopaedia (1920), second edition, volume 5, the word "chimes" is defined as follows:

Chimes * * *. Music played on a set of bells in a church tower, either by a performer or by mechanism. * * *

In the Encyclopaedia Britannica (1947), volume 5, there appears:

Chime. * * *. A mechanical arrangement by which a set of bells in a church or other tower, or in a clock, are struck so as to produce a sequence of musical sounds or a tune. (For the mechanism of such an arrangement in a clock and in a set of bells, see the articles CLOCKS and BELL.) * * *

From the Encyclopaedia Britannica (1947), volume 3, the following is quoted:

Bell-ringing.—The science and art of bell-ringing, as practised upon church and tower bells, falls under two main heads:—(1) Mechanical ringing, in connection with the machinery of a clock or "carillon"; (2) Ringing by hand, by means of ropes attached to the fittings of the bells, whereby the bell itself is either moved as it hangs mouth downwards sufficiently for the clapper just to touch its side (called, technically, "chiming"); or is swung round nearly full circle with

its mouth uppermost (technically "ringing"), in which case the impact of the clapper is much heavier, and the sound produced is consequently louder and more far-reaching. Mechanical ringing is more common in America and on the Continent of Europe, especially in Belgium and Flanders; ringing by hand is more common in England, where the development of change-ringing * * * has brought it into prominence.

(1) *"Mechanical ringing" is effected by a system of wires connected with small hammers striking the bells, usually on the outside in the case of clocks and inside in the case of chimes and carillons, and worked either by connection with the machinery of a clock, so as to play tunes or artificially arranged chimes at definite intervals; or with a key-board containing handles. The first of these methods is familiar in the chimes (Cambridge, Westminster, etc.) heard from many towers at the striking of the hours and quarters; or in hymn tunes played at intervals (e. g., of three hours) upon church bells.* * * * [Italics supplied.]

Whereas research does not disclose a case directly in point with the issue here presented, it is worthy of note that, in *Eidlitz & Son (Inc.), as Agent* v. *United States*, 12 Ct. Cust. Appls. 56, T. D. 39998, our appellate court affirmed this court in upholding the action of the collector of customs in classifying an importation of chimes, composed of 10 bells and the *necessary operating mechanism*, as properly classified by that official as musical instruments in paragraph 373 of the Tariff Act of 1913.

Upon the record before us and in the light of the various references above set forth, we are of opinion that the Westminster striking mechanism with gear and four hammers should properly have been classified as parts of sets of tuned bells of the type known as chimes in paragraph 1541 (a) of the Tariff Act of 1930, as modified, *supra*, and subjected to duty at the rate of 15 per centum ad valorem, as alleged by plaintiff. The claim in the protest to that effect is, therefore, sustained.

Judgment will issue accordingly.