(C.D. 3982)

SALENTINE & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 26, 1970)

*Rode & Qualey* (*John S. Rode* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven Sosnov* and *Herbert T. Posner*, trial attorneys), for the defendant.

MALETZ, Judge: This case concerns "carry-over mechanisms" that were manufactured in Switzerland and imported from Canada in early 1966. The articles were classified by the government as clocks under item 715.31, Tariff Schedules of the United States, and assessed duty at the compound rate of $1.50 each plus 32.5 percent ad valorem. Subsequently the government abandoned this classification and now contends that the importations are classifiable under item 720.16 as "[o]ther clock movements * * * [v]alued over $5 but not over $10 each" at the same compound rate of $1.50 each plus 32.5 percent ad valorem.

Plaintiff's protest originally claimed that the articles were properly classifiable under item 715.66 at the compound rate of $1.50 each plus 20 percent ad valorem as "[t]ime switches with watch or clock movements, or with synchronous or subsynchronous motors." Plaintiff has now abandoned this claim and instead relies on alternative claims under various basket provisions, i.e., items 660.80, 678.50, 680.90 and 685.90.

To the extent relevant, the statutory provisions now involved are as follows:

> Government's claimed classification:
> Schedule 7, Part 2, Subpart E headnotes:
>
> 1. This subpart covers watches and clocks, time switches and other timing apparatus with clock or watch movements, and parts of these articles. * * *
>
> *    *    *    *    *    *    *
>
> 2. For the purposes of this subpart—
>
> *    *    *    *    *    *    *
>
> (c) the term "clock movement" means any movement or mechanism, other than "watch movements" as defined in headnote 2(b), above, intended or suitable for measuring time; [Emphasis in original.]
>
> *    *    *    *    *    *    *
>
> Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:
>
> *    *    *    *    *    *    *
>
> Other clock movements:
>
> *    *    *    *    *    *    *

720.16   Valued over $5 over but not over $10 each___   $ 1 . 5 0   e a c h
+32.5% ad
val. +12.5¢
for each
jewel, if any.

Plaintiff's alternative claims:

Non-electric engines and motors not spe-
cially provided for, and parts thereof:

\*        \*        \*        \*        \*          \*          \*

660.80      Spring-operated and weight-operated
motors _____   20% ad val.
678.50      Machines not specially provided for,
and parts thereof_____   10% ad val.
680.90      Machinery parts not containing elec-
trical features and not specially
provided for_____   19% ad val.
685.90      Electrical switches \* \* \* and other
electrical apparatus for making or
breaking electrical circuits \* \* \*
and parts thereof_____   17.5% ad val.

The imported articles are spring-wound mechanisms which are in-
corporated into time switches to keep the latter on schedule in the
event the electric power is interrupted.[1] A time switch, it is to be noted,
makes or breaks an electrical circuit at predetermined times by the
rotation of a disc within a ring of trippers spaced at predetermined
points. The time switches here are powered by synchronous motors;
they are of the 24-hour type and the discs or dials are divided into
12-hour periods to represent the A.M. and P.M. hours. The A.M.
hours are marked in black numerals on a white background while
the P.M. hours are marked in white numerals on a black background.
The entire disc is calibrated numerically in 15-minute segments and
a single hand indicates the time. In operation, it is possible, by looking
at the disc, to approximate the time of day as well as determine the
exact time that has passed since the last scheduled event or remains
for the next scheduled event in the time switch's programming cycle.

The carry-over mechanism continues the rotation of the disc in the
event of a power failure and thus keeps the pre-set schedule of the
time switch on time during such failure for a period of approximately

---

[1] Time switches are articles designed primarily to make or break electrical circuits auto-
matically at given times and are used to control lighting (for public places, shop windows,
staircases, illuminated signs, etc.), heat circuits (water heaters, etc.), cooling installations,
pumps, two-rate electricity supply meters, etc. See *Tariff Classification Study, Schedule 7,*
p. 167 (1960) ; *Explanatory Notes to the Brussels Nomenclature,* heading 91.06, p. 1111
(1955).

10 hours.[2] This is sufficient to sustain the rotation of the disc through most power failures which generally are of short duration. When the power is restored, the time switch does not have to be reset since its programming has been sustained by the carry-over mechanism.

The issue—as the parties agree—is whether the carry-over mechanisms are "intended or suitable for measuring time" within the meaning of headnote 2(c) of Schedule 7, Part 2, Subpart E. As to this, plaintiff's position is that the mechanisms are not clock movements intended or suitable for measuring time because they are not capable *in normal use* of showing how much time has passed since or remains before some particular time or event. Defendant, on the other hand, maintains that the imported articles, when in use, are attached to a dial or disc and show how much time has passed since, or remains before, a scheduled event in the time switch's programming cycle, and thus satisfy the requirements of headnote 2(c).

Both parties rely on *Morris Friedman* v. *United States*, 45 CCPA 99, C.A.D. 680 (1958). In that case, time-lock movements for bank vaults and safes were held to be properly classifiable under that portion of paragraph 368(a) of the Tariff Act of 1930 covering mechanisms or devices for "recording, indicating or performing any operation or function at a predetermined time or times." In the course of its opinion, the court in considering paragraph 367(a) and a portion of paragraph 368(a) covering "time-keeping, time-measuring, or time-indicating mechanisms" stated that "the minimum requirement for a time-keeping, measuring or indicating device is that it shall be capable, in normal use, of showing how much time has passed since or remains before some particular time or event." 45 CCPA at 103.

It should be observed, however, that another provision of paragraph 368(a) covered "any mechanism * * * intended or suitable for measuring time"—which provision was not involved in *Friedman* and hence was not considered by it in its opinion. Further, the fact that Congress provided in paragraph 368(a) of the 1930 act for (i) "time-keeping, time-measuring, or time-indicating mechanisms" and also for (ii) "any mechanism * * * intended or suitable for measuring time" would seem clear indication that the items covered by category (i) are not necessarily identical with those covered by category (ii). For in construing a statute, significance and effect should, if possible, be given to every provision; no provision should be construed as meaningless or superfluous. See e.g., *Hol-Gar Manufacturing Corp.* v. *United States*, 351 F. 2d 972, 979 (Ct. Cl. 1965); *Carey & Skinner, Inc.* v.

---

[2] The carry-over mechanism does not connect or disconnect the circuits as does the time switch.

*United States*, 42 CCPA 86, 89, C.A.D. 576 (1954). *Cf. John B. Hewett Co., Inc.* v. *United States*, 48 CCPA 24, 27, C.A.D. 757 (1960). Thus, the opinion in *Friedman* construing the term "time-keeping mechanisms"—as devices capable in normal use of showing how much time has passed since or remains before some particular time or event—is not dispositive in determining the meaning of the term "mechanisms intended or suitable for measuring time."

For this reason, we cannot agree with the essential premise of plaintiff's argument that to constitute a "clock movement"—i.e., a mechanism intended or suitable for measuring time—the movement must be capable *in normal use* of showing how much time has passed since or remains before some particular time or event. Indeed, to so restrict the term "clock movement" would seem contrary to the statutory definition of a "clock movement" as "*any* movement or mechanism * * * intended or suitable for measuring time." [Emphasis added.]

Nor is there anything in the legislative history or case law which would indicate that the term "mechanism intended or suitable for measuring time" is to be given the restricted meaning indicated by plaintiff. This is emphasized by the only case we have found dealing with this matter—*H. H. Sticht & Co.* v. *United States*, 22 CCPA 362, T.D. 47386 (1934), where the court stated in passing (at 365):

> Although the witnesses for the importers, two in number, testified that *the involved tachometers would not measure time, nor record, indicate, or perform any operation or function at any predetermined time or times*, it clearly appears from the testimony introduced by the Government, and from Exhibits I and II that they have, as parts thereof, *clockwork mechanisms, intended, among other things, for measuring time, and without which, they could not perform their proper functions*. [Emphasis added.]

From what has been said, it is apparent that to constitute a "clock movement" it is not essential that the mechanism be capable, *in normal use*, of showing how much time has passed since or remains before some particular time or event; it is sufficient, as the statutory definition recites, that it be *intended or suitable* for measuring time. And in this context, we think it clear that the carry-over mechanism comes squarely within this definition of a "clock movement" for the following reasons: First, the mechanism is designed to maintain the time schedule of the time switch's disc rotation in the event of a power failure, and obviously the only way it can perform this function is by measuring time. Second, as the carry-over mechanism rotates the disc, one viewing the dial can not only approximate the time of day but can also determine exactly how much time has passed since, or

remains before, a predetermined event in the time switch's scheduled programming.[3]

We therefore hold that the imported carry-over mechanisms are properly classifiable under item 720.16 as "Other clock movements." The protest is overruled, and judgment will issue accordingly.

---

[3] It is unnecessary to reach the question as to whether the carry-over mechanisms also constitute time-measuring devices within the *Friedman* definition—i.e., devices capable *in normal use* of showing how much time has passed since or remains before some particular time or event.