59 CCPA

**SALENTINE & COMPANY, Inc.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**
**Customs Appeal No. 5410.**

United States Court of Customs and Patent Appeals.
Nov. 18, 1971.

Rode & Qualey, New York City, attorneys of record, for appellant. John S. Rode, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, and Velta A. Melnbrencis, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, First Division, 64 Cust.Ct. 213, C.D. 3982 (1970), overruling a protest against the classification of "carry-over mechanisms" under TSUS 720.16 as "Other clock movements" valued at over $5 but not over $10 each. We affirm.

## THE MERCHANDISE

The carry-over mechanisms are spring-powered devices for incorporation into electrical time switches to keep them on schedule for up to ten hours in the event of a temporary power failure. Time switches are mechanisms used to make or break electrical circuits automatically at previously determined intervals. The time switches into which the great majority of the carry-over mechanisms at bar were evidently designed to be incorporated were cyclical, operating on a period of either twenty-four hours or seven days. The dials of the 24-hour models were calibrated in 15-minute segments, and on each dial was a single hand by means of which one could approximate the time of day and the amount of time since or until the various events the time switches were used to control.[1]

However, appellant's witness testified that the carry-over mechanisms did not have the accuracy generally required of clocks and that in operation the dials on the time switches were normally enclosed in non-transparent cases, which might even be screwed shut.

## CLASSIFICATION BELOW

The carry-over mechanisms were originally classified as clocks under TSUS 715.31, but the Government subsequently abandoned that classification in favor of "Other clock movements" valued at over $5 but not over $10 each, TSUS 720.16. To the extent relevant here, the statutory provisions are:

Schedule 7, Part 2, Subpart E.

*Subpart E headnotes:*

1. This subpart covers watches and clocks, time switches and other timing apparatus with clock or watch movements, and parts of these articles. * * *

2. For the purposes of this subpart—

\* \* \* \* \* \*

(c) the term *"clock movement"* means any movement or mechanism, other than "watch movements" * * intended or suitable for measuring time; * * *.

*Item:*

Clock movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:

\* \* \* \* \* \*

Other clock movements:

\* \* \* \* \* \*

720.16 Valued over $5 but not over $10 each * * *.

Plaintiff has at various times claimed that the carry-over mechanisms should be classified under one of five other items, but on appeal it has limited itself to:

Schedule 6, Part 4, Subpart A.

---

1. The record does not give similar specific information with respect to the seven-day models, but the parties seem to have assumed that they were similar in this respect.

Non-electric engines and motors not specially provided for and parts thereof.:

&ast; &ast; &ast; &ast; &ast; &ast;

660.80 Spring-operated and weight-operated motors &ast; &ast; &ast;.

## THE OPINION BELOW

The Customs Court opinion states:

The issue—as the parties agree—is whether the carry-over mechanisms are "intended or suitable for measuring time" within the meaning of headnote 2(c) of Schedule 7, Part 2, Subpart E. As to this, plaintiff's position is that the mechanisms are not clock movements intended or suitable for measuring time because they are not capable *in normal use* of showing how much time has passed since or remains before some particular time or event. Defendant, on the other hand, maintains that the imported articles, when in use, are attached to a dial or disc and show how much time has passed since, or remains before, a scheduled event in the time switch's programming cycle, and thus satisfy the requirements of headnote 2(c).

The emphasized language is critical because, in Friedman v. United States, 45 CCPA 99, C.A.D. 680 (1958), in construing that portion of paragraph 368 (a) of the Tariff Act of 1930 covering "time-keeping, time-measuring, or time-indicating mechanisms," we stated (p. 103) that:

&ast; &ast; &ast; the minimum requirement for a time-keeping, measuring or indicating device is that it shall be capable, *in normal use,* of showing how much time has passed since or remains before some particular time or event. [Emphasis supplied.]

We there contrasted devices which "are definitely designed to mark the passage of time and have at least one part which performs no other function" with "devices which perform a function at a predetermined time, but in which the operating parts are concealed so that the device would not normally convey any information as to the passage of time," indicating that the former came within the quoted language from paragraph 368 (a) but that the latter did not. The court below, however, noting that *another* provision of paragraph 368(a), not involved in *Friedman,* covered "any mechanism &ast; &ast; &ast; intended or suitable for measuring time," held that the *Friedman* rationale did not necessarily control this case. To avoid construing one of the provisions of paragraph 368 (a) as meaningless, the court drew a distinction between time-measuring devices on the one hand and mechanisms intended or suitable for measuring time on the other. This it did by limiting the "in normal use" gloss to the provision construed in *Friedman.* The broader language retained in TSUS 720.16 it held to be satisfied (1) because a carry-over mechanism of the type involved here is "designed to maintain the time schedule of the time switch's disc rotation in the event of a power failure, and obviously the only way it can perform this function is by measuring time," and (2) because, as the carry-over mechanism rotates the disc, one viewing it can approximate the time of day and time since or until the events in the time switch's scheduled program.

## THE PARTIES' ARGUMENTS

Appellant first argues that the carry-over mechanisms cannot be classified under TSUS 720.16 because the above-quoted headnote to the subpart in which that item is found limits the subpart to "watches and clocks, time switches and other timing apparatus with clock or watch movements, and parts of these articles," and carry-over mechanisms are none of the above. Second, it argues that the subject carry-over mechanisms are not "intended or suitable for measuring time" because the "primary function" of the time switches into which they were intended to be incorporated is "making and breaking electrical circuits," not measuring time. Finally, it argues that the carry-over mechanisms are clearly

motors which are operated by compressed springs.

The Government argues that appellant's first point is not properly before this court because it was not presented to or considered by the Customs Court, but that, in any event, the carry-over mechanisms are indeed parts of time switches and thus within the scope of the subpart. In response to appellant's second point, the Government argues that TSUS 720.16 covers *any* article intended *or* suitable for measuring time, whether or not it is *primarily* a time-measuring device, and that the subject merchandise meets that test because it measures time in the event of a power failure. Finally, the Government notes that the Customs Court did not determine the applicability of appellant's less-specific classification, which observation would seem to support at most a remand, but goes on to argue that the overruling of appellant's protest should be affirmed even if we are persuaded that the goods were incorrectly classified because "it is clear *as a matter of law* that the carry-over mechanisms are not classifiable as spring-wound motors." [2] (Emphasis in original.) This is so, the Government argues, because "There is no evidence in the record that the mechanisms are ever bought, sold, or otherwise commercially handled in the United States as spring-wound motors" [2] and because the presence in them of many gears and other parts besides the drive mechanisms themselves make them "more than" mere motors.

## OPINION

As to appellant's first point, we agree with the Government that it comes within the scope of our general rule that issues not presented to or considered by the Customs Court will not be considered by this court, United States Wolfson

Bros. Corp. v. United States, 52 CCPA 46, 51, C.A.D. 856 (1965), and not within any exception thereto. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Of course we are aware that many appellants do not present arguments to the appellate court in precisely the same form that proved unpersuasive below, so when to invoke this rule is to some extent a question of judgment. However, the passage from the lower court's opinion quoted supra indicates clearly to us that it did not consider this point or any argument reasonably close to the one appellant now presses on us, and appellant has offered no evidence that this point was presented to the court but passed over sub silentio in its opinion. Accordingly, we think this a proper case in which to forcibly remind a party that this is an appellate court and not a court of first instance.

As to appellant's second point, we also agree with the Government that the language *"any* movement or mechanism * * * intended *or suitable* for measuring time" in Item 720.16 is broad enough to encompass the subject merchandise. "Suitability" for a use "exclude[s] any mere incidental use from [being] a controlling classification factor," United States v. Lorsch & Co., 8 Ct.Cust.App. 109, 111, T.D. 37222 (1917), but it obviously includes many articles which would be excluded by a "chief" or "normal" use provision. As our predecessor court said in the *Lorsch & Co.* case, American tariff acts (p. 110)—

* * * abound with instances wherein "use" is made the criterion of applicability in different degrees or subject to different qualifications or limitations. Such terms as "chief use," "suitable for use," "expressly for use," "such as is used," "for use as," "solely for use as," "fit only for," and

---

2. We do not understand what appellee means by "spring-wound motors." Its brief heading and the TSUS 660.80 provision being discussed refer to "spring-*operated* motors." (Emphasis ours.) We are aware that Plaintiff's Exhibit 1 is a catalog entitled "PARAGON Spring Wound Carry-Over" but the term is

unexplained. It would appear that the carry-over mechanism is powered by a *wound spring* and, when electric power is on, the synchronous electric motor (not part of the imports) slowly winds up the spring and maintains it in that condition.

other similar expressions are familiar terms in tariff adjudication. Each is given its own peculiar sphere of influence in tariff classification. Presumptively this difference of words imports a different meaning, and so the adjudications are.

Thus, we agree with the Customs Court that, contrary to what one might at first suppose, there *is* a difference for tariff purposes between a provision for "time-measuring devices," previously held to be a "normal-use" provision, and a provision for mechanisms suitable for measuring time, and we agree that the carry-over mechanisms are suitable for measuring time because one can approximate to a reasonable degree of accuracy the time of day and the time since or until events in the time switch's scheduled program by viewing the position of the dial on the time switch, which is being powered by the carry-over mechanism, relative to a stationary pointer.[3]

Since we agree with the Government on appellant's first two points, we have no occasion to reach its third. The judgment below is affirmed.

Affirmed.

---

3. It is true that the carry-over mechanisms themselves have no hands and no dials, which means that, *by themselves*, they are not suitable for measuring time. However, the tariff provision as quoted supra specifically provides for clock movements, assembled, *without dials or hands.* Thus, the fact that dials and/or hands must be added to clock movements before they will be truly suitable for use in measuring time is apparently insufficient to remove them from the purview of this item.