**HERMLE BLACK FOREST CLOCKS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–08–01003.**

United States Court of International Trade.

Oct. 30, 1990.

Customs Service under item 720.86, Tariff Schedules of the United States ("TSUS") ("Assemblies and subassemblies for clock movements, consisting of two or more parts or pieces fastened or joined together: ... Other assemblies and subassemblies: ... For other movements ..... 11.2% ad val. + ... 0.52¢ for each other piece or part"). The plaintiff claims classification should have been as percussion musical instruments, pursuant to TSUS item 725.34 ("Sets of tuned bells known as chimes, peals, or carillons: Containing not over 22 bells ...... 4.4% ad val.") or item 725.40 ("Other ...... 6.9% ad val.").[1]

I

In lieu of trial, the parties have submitted, and the court has accepted, a stipulation which sets forth the following salient facts, among others:

3. The merchandise ... is tuned metal gong rods mounted to a metal base and commercially referred to as gongs....

\* \* \* \* \* \*

5. Prior to importation, the subject merchandise is tuned.

6. The subject merchandise is not attached to the pillar plate or any other part of the movement of a clock.

7. The subject merchandise is not physically attached to any other assembly or subassembly of a clock movement. The rod units, together with the Westminister chime movement and clock movement, are mounted in the clock cabinet. The rod units are mounted on the clock cabinet in position between two sets of chime hammers.

8. ...

b. The hammers are part of the Westminister chime movement.

c. The hammers are mechanically activated by the conventional clock movement's time keeping function.

Sandler & Travis, P.A., Leonard L. Rosenberg and Robert G. Schrader, Miami, Fla., for the plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Al J. Daniel, Jr., Sheryl A. French, U.S. Customs Service, New York City, of counsel, for defendant.

AQUILINO, Judge:

The plaintiff challenges classification of tuned metal rods from Germany by the

---

**1.** Alternatively, as discussed hereinafter, the court has been urged to consider TSUS item 652.60 ("Non-electric bells and gongs, and parts thereof, all the foregoing of base metal: ... Other"), item 726.90 ("Musical instrument parts not specially provided for: ... Other") or item 657.25 ("Articles of iron or steel, not coated or plated with precious metal: ... Other") as possible, better classifications of the merchandise.

d. On a periodic basis (every 15 minutes), mechanical motion is transferred to the rod units from the hammers; however, there is no continuous contact between the rod units and the hammers.

\* \* \* \* \* \*

10. When hammers strike the various rods, a musical note or sound is produced at the quarter, half, three-quarter and hourly strikes....

11. Each rod makes a separate and distinct musical note when struck by a particular hammer.

12. The hammers which strike the rod units are conventional nonelectronic movements with a multitude of moving parts....

13. The ordinary clock movement which is mounted in the same clock cabinet as the rod units is a conventional nonelectronic movement with a multitude of moving parts....

\* \* \* \* \* \*

16. ... When struck by the hammers, the rod units or chime rods will announce the time audibly, produce notes, and the Westminister theme.[2]

## II

■ The Customs Courts Act of 1980 provides that, in an action such as this, the decision of the Service is presumed to be correct and the burden of proving otherwise rests upon the party challenging the decision. 28 U.S.C. § 2639(a)(1).

In attempting to bear its burden herein, the plaintiff relies on the above stipulation and argues that the

gong rod units are not parts, assemblies or subassemblies of clock movements.

They are completely independent of the clock movement and are mounted separately in the case. ... [I]t is evident from the case law interpreting "movements" that the provision is intended to encompass only those parts which are actually necessary for the mechanical timekeeping function, *i.e.*, plates, pillars, stakements, jewels, springs, drive gears, pinions, winding gears, etc., and which perform the necessary mechanical functions ... to indicate time, *i.e.*, incremental movements of tiny gears which result in eventual movement of the hands on the face of a clock indicating the time.

Plaintiff's Reply Brief, pp. 9–10, citing *Texas Instruments Inc. v. United States*, 1 CIT 236, 518 F.Supp. 1341 (1981), *aff'd*, 69 CCPA 136, 673 F.2d 1375 (1982), and *Belfont Sales Corp. v. United States*, 11 CIT 541, 666 F.Supp. 1568 (1987), *reh'g denied*, 12 CIT ——, 698 F.Supp. 916 (1988), *aff'd*, 878 F.2d 1413 (Fed.Cir.1989). What is particularly notable about plaintiff's argument is its persistent usage of the preposition *of* when referring to clock movement(s).

When the argument is couched in such a precise manner, it has merit, particularly in view of the stipulation, *supra*, that the "subject merchandise is not attached to the pillar plate or any other part of the movement of a clock" and "is not physically attached to any other assembly or subassembly of a clock movement." In other words, at least for purposes of this action, the gong rod units are not assemblies or subassemblies [3] *of* the clock movements with which they are housed.

However, as quoted above, TSUS item 720.86 encompasses *"Other* assemblies and subassemblies: ... *For other* movements"

**2.** Notwithstanding the merchandise's country of origin, the court presumes that the intended reference in this paragraph and in paragraphs 7 and 8.b above is to the abbey at Westminster in England, which is famous for its carillon, among other things.

In any event, each side's filing of a brief in conjunction with this stipulation was followed with a motion by the opposing party to strike all or part of that brief. Defendant's motion has already been denied by the court, and plaintiff's deserves the same fate. That is, in its papers in opposition, the defendant appropriately suggests

that the court consider reserving decision on plaintiff's motion to strike, pending consideration of the merits, which has now made that motion irrelevant. Hence, it is denied.

**3.** Referring to Webster's Third New International Dictionary (1976), the plaintiff offers definitions of subassembly as "a structural unit manufactured ... separately but designed to be incorporated with other units ... of the finished product" and of assembly as "a collection of parts ... form[ing] a complete machine, structure, or unit of a machine."

(emphasis added). And the parties have stipulated that the "hammers which strike the rod units are conventional nonelectronic movements" and "are part of the Westminister [*sic*] chime movement." Thus, every 15 minutes "mechanical motion is transferred to the rod units from the hammers".

According to the plaintiff, as noted above, "movement", as used in the TSUS, was "intended to encompass only those parts which are actually necessary for the mechanical time keeping function". But headnote 2(c), Part 2, Subpart E of TSUS Schedule 7 (1983) defined "clock movement" as "any movement or mechanism ... intended or suitable for measuring time", and the definition has been equally expansive in judicial decisions. *See, e.g., Herman H. Sticht & Co. v. United States*, 22 CCPA 362, T.D. 47386 (1934) (tachometers properly classified as clocks and clock movements under paragraph 368 of the Tariff Act of 1922); *Salentine & Company v. United States*, 64 Cust.Ct. 213, C.D. 3982 (1970), *aff'd*, 59 CCPA 26, 450 F.2d 908 (1971) (carry-over mechanism intended to sustain time-switch rotation in event of power failure properly classified as clock movement). In the *Texas Instruments* case cited by the plaintiff, *supra*, the courts agreed that a movement, "in accordance with the common and commercial meaning of the term", signifies "a mechanism possessing moving parts to which or from which motion is transferred." [4]

Here, the parties have stipulated that "mechanical motion is transferred to the rod units from the hammers". Furthermore, "[w]hen struck by the hammers, the rod units or chime rods will announce the time audibly". In *Herman Miller Clock Co. v. United States*, 22 CCPA 332, 333, T.D. 47363 (1934), it was stipulated that the gongs at issue had "five unplated base metal rods ... fastened into an iron or steel base ... specially designed for use and ... used exclusively in and as parts of Westminster chimes clocks". Customs had classified the units as "assemblies or subassemblies consisting of two or more parts", and the court of appeals, in affirming the Customs Court, found it was "fairly shown by the record that these [gongs] are assemblies or subassemblies, and that they constitute a part of the movements of the clocks of which they will ultimately be parts." *Id.* at 334.

The plaintiff contends that this *Herman Miller* decision and an earlier one involving the same company and reported at 63 Treas.Dec. 455, T.D. 46244 (1933) are inapposite because they did not consider as an alternative classification chimes or peals and involved substantially different tariff provisions. Plaintiff's Reply Brief, p. 3. This does not detract, however, from the finding that the merchandise constituted clock-movement assemblies or subassemblies.

In any event, the plaintiff argues that its merchandise is classifiable as percussion musical instruments, sets of tuned bells known as chimes, peals or carillons per TSUS item 725.34, taking the position that General Interpretive Rules 10(c) [5] and 10(ij) [6] require that the gong rod units be classified under that item because it most specifically describes them. The plaintiff refers to *M.J. Paillard & Co. v. United States*, T.D. 16219 (1895), and *J.C. Robold & Co. v. United States*, 43 Treas.Dec. 18, T.D. 39396 (1923), which held "musical instruments" the correct classification of mechanical singing birds in cages because they produced musical notes. The latter decision declined to confine the definition of musical instrument to instruments capable of emitting "a continuous melody ...

---

4. 1 CIT at 239, 518 F.Supp. at 1343, referring to *United States v. Texas Instruments Inc.*, 67 CCPA 59, 620 F.2d 269 (1980), *aff'g* 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979). While the 1981 CIT decision dealt with watch, rather than clock, movements, as the plaintiff indicates, those for watches "generally vary only in size from clock movements". Plaintiff's Brief, p. 8.

5. This rule provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it".

6. The language of this rule is that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

[or] upon which a chromatic scale can be played." 43 Treas.Dec. at 20. Of course, those birds, though animated by clockwork, were not clocks; their *raison d'etre* was periodic melody.[7] The plaintiff also refers to decisions classifying wooden temple blocks and triangles as musical instruments, namely, *United States v. Foochow Importing Co.*, 18 CCPA 313, T.D. 44562 (1931), and *United States v. Sears, Roebuck & Co.*, 7 Ct.Cust.App. 60, T.D. 36388 (1916). As with *Paillard* and *Robold*, these cases did not delimit the term musical instrument: "for tariff purposes ... a musical instrument may be said to be any sound-producing contrivance which, in this country, is chiefly used in making music, or in connection with making music to give volume, tone, or effect to the same." *Foochow*, 18 CCPA at 319. *See also Sears, Roebuck*, 7 Ct.Cust.App. at 61–63.

In this action, the court does not doubt that striking of the merchandise after encasement gives rise to pleasing sound, but as discussed in *Foochow*,

> if the articles before us are to be held musical instruments, then a handsaw, a hat, dish pan, jug, or broom handle, or the like, ofttimes used in connection with jazz music, must also be regarded as musical instruments. Under the foregoing definition, it is at once apparent that none of these articles could be regarded as musical instruments unless chiefly used as such in this country. It is a matter of common knowledge that their use in connection with music making is only incidental to very extensive uses in other fields.[8]

Heading 92–06 of the Explanatory Notes to the Brussels Nomenclature describes (at pages 1677–78 (1966)) "Other percussion instruments such as ... (ix) Bells, sets of bells, chimes and tubular bells" as "a series of tubes suspended in a frame and struck either with a bare hand or with a hammer" but excludes "Chimes and other striking mechanisms for clocks", referring instead to heading 91.11, "Other Clock and Watch Parts". Chapter 91 lists (at page 1648 (1972)) the parts of clock movements and then provides that "Clocks or watches may be equipped with a striking work, an alarm mechanism or a set of chimes" which require a "special movement." Heading 91.-11, in describing such a movement, refers to "Clock striking work" and explicitly includes "bell, gong, chimes" as part thereof. *Id.* at 1666. The Notes also refer to "a striking mechanism (hours, half-hours, or quarters) acting on a bell or gong, or a multi-gong chiming mechanism". *Id.* at 1654.

The U.S. Tariff Commission Summaries of Trade and Tariff Information for TSUS Schedule 7 list (at page 151, vol. 3 (1968)) "Sets of tuned bells known as chimes, peals, or carillons" as percussion musical instruments but also state:

> The percussion instruments of principal importance in the trade are cymbals, drums, chimes, peals, carillons, tuned handbells, glockenspiels, xylophones, marimbas, and a wide variety of rhythm instruments with percussive qualities. Such articles are generally used in rhythm bands for preschool and kindergarten children, and they include tambourines, triangles, maracas, gourds, castanets, claves, and other instruments.

> The chimes, peals, and carillons considered here are used almost exclusively in churches or campaniles.... Educational institutions use drums, cymbals, and most of the other portable percussion instruments for school orchestras and bands and also often provide group or individual instruction.

---

7. Moreover, the court notes in passing that when *Paillard* and *Robold* were decided, no specific provision for "music boxes" existed in the tariff laws. *See, e.g., Amico, Inc. v. United States*, 586 F.2d 217, 220 n. 4 (CCPA 1978).

8. 18 CCPA at 319. *See also Montgomery Ward & Co. v. United States*, 62 Cust.Ct. 718, 723, C.D. 3853 (1969) ("it is clear that the intent under the tariff schedules is that an article should be classified as a true musical instrument ... only if it is of such quality and character as would ordinarily be used for serious musical study or use"); U.S. Customs Service letter ruling 038376 (Jan. 23, 1976) ("wind chimes ... do not belong to a class or kind of article chiefly used in the United States in making music"), Plaintiff's Brief, Ex. B, p. 2.

Finally, headnote 1(iii) to Subpart F of TSUS Schedule 6, Part 3 (1983) excluded therefrom electric bells or gongs (referring to Part 5 of Schedule 6 (Electrical Machinery and Equipment)), bells or gongs which are musical instruments or parts thereof (referring to Part 3 of Schedule 7 (Musical Instruments, Parts, and Accessories)), and clock chimes and gongs (referring to Part 2, Subpart E of Schedule 7 (Watches, Clocks, and Timing Apparatus)) and thus distinguished between bells which are musical instruments—as referred to, for example, in the Notes and the Summaries— and those which are clock chimes.

To summarize then, the references are to the effect that for an instrument to be musical, it must be used chiefly for the making of music and not for some other purpose. Since this court cannot attribute such a quantum of use to the merchandise at bar, the court cannot conclude that plaintiff's able presentation in favor of TSUS item 725.34 has overcome the statutory presumption of correctness which governs defendant's position on item 720.86.

### III

■ In *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed.Cir.), *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984), the court of appeals held that this Court of International Trade

cannot determine the correct result simply by dismissing the importer's alternative as incorrect. It must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative. In some cases, the government's classification may be so patently incorrect that the importer can overcome the presumption of correctness without producing a more satisfactory alternative. In other cases, the importer's alternative may have faults and yet still be a *better* classification than the government's. In either case, the court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand. [emphasis in original; footnote omitted]

In furtherance of this teaching, as indicated above, other alternatives have been raised for consideration, including TSUS item 726.90 ("Musical instrument parts not specially provided for: ... Other"). In regard to this item, the plaintiff attempts to rely on *Atlanta University v. United States*, 39 Cust.Ct. 258, C.D. 1938 (1957), which involved a "Westminster striking mechanism with gear and four hammers". The mechanism was to be installed in a clock tower along with a clock, a 10–bell chime and a keyboard. The court rejected the government's argument that the striking mechanism was an assembly or subassembly for a clock and concluded instead that the item was part of a musical instrument. However, as stated by the court,

for chimes to be musical instruments within the purview of the tariff act, it is essential that there be incorporated therewith a means of functioning. In the instance of the chimes installed at Atlanta University, it appears from the record that they may function either by a manually operated keyboard for the purpose of playing carols or by the mechanical means provided by the present importation which receives its electrical impulses from the tower clock on the quarter-hour periods....

*Id.* at 261. The court relied on *Eidlitz & Son (Inc.) v. United States*, 12 Ct.Cust. App. 56, T.D. 39998 (1924), which upheld classification of a set of chimes played by means of a keyboard as a musical instrument. In *Atlanta University*, the chimes were involved in serious musical study and playing, and the striking mechanism was classified as part of that instrument. The same cannot be said for the gong rod units at issue here; they are only "played" within the framework of, and subject exclusively to, a clock.

■ Other suggested alternatives are "Non-electric bells and gongs" (TSUS item 652.60) and "Articles of iron or steel" (item 657.25). The former fell under Schedule 6, Part 3, Subpart F and therefore under headnote 1(iii), which, as stated above, explicitly excluded chimes intended for clocks. Similarly, item 657.25 entails reference to the Subpart G headnote which covered

"only articles of metal which are not more specifically provided for elsewhere". Moreover, even if the gong rod units were covered equally by the foregoing suggested alternatives to item 720.86, General Interpretive Rule 10(d) [9] would preclude classification under them, as the latter carries a higher duty.

In conclusion, this court is not persuaded that the Service's classification of the merchandise at issue under item 720.86 was incorrect or that the TSUS otherwise contained a better classification. Judgment must therefore enter in favor of the defendant.

9. This rule states that, "if two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest".