**DITBRO PEARL CO., INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 74–28.**

United States Court of Customs and Patent Appeals.

May 15, 1975.

**1158**

Barnes, Richardson & Colburn, Sharretts, Paley, Carter & Blauvelt, New York City, attorneys of record, for appellant. Eugene F. Blauvelt, New York City, of counsel.

Carla A. Hills, Asst. Atty. Gen., New York City, Andrew P. Vance, Chief, Customs Section, New York City, Velta A. Melnbrencis, New York City, for the U. S.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the judgment of the United States Customs Court, 72 Cust.Ct. 1, C.D. 4497 (1974), overruling appellant's claim for classification of certain aluminum chain belts as other chains, item 652.38 TSUS. The opinion of the Customs Court, familiarity with which is assumed, appears at 72 Cust.Ct. 1, C.D. 4497 (1974). The court held that the imported merchandise was properly classified by the District Director of Customs as jewelry and other items of personal adornment, item 740.38 TSUS. We affirm.

■ The trial court found that the evidence fully supports the presumption of correctness attaching to the District Director's classification of the imported merchandise under item 740.38 TSUS. We fully agree with this finding for the reasons given in the careful opinion of the Customs Court.

■ As to appellant's argument that classification of the imported merchandise under item 740.38 TSUS represents a change in a prior uniform and established practice classifying chain belts as chains under item 652.38 TSUS, done without notice in violation of section 315(d) of the Tariff Act of 1930, as amended, we also agree with the trial court's holding on this point. The key issue is "whether the Secretary of the Treasury (or his delegate) has made a 'finding' of 'an established and uniform practice', pursuant to section 315(d)." Asiatic Petroleum Corp. v. United States, 449 F.2d 1309, 1312, 59 CCPA 20, 22 (1971). Such a "finding" does not appear in the record before us, and this "obviates any need for notice prior to an effective change." Martin Brokerage Co. v. United States, 36 Cust.Ct. 35, 39, C.D. 1750 (1956). The abstracted Customs Service decision, relied upon by appellant, T.D. 68–77(3), 2 Cust.Bull. 157 (1968), does not, on its face, purport to be such a "finding" as required by section 315(d), nor does this abstract convey any "clear impression" that a "finding" under that section was intended. Asiatic Petroleum Corp. v. United States, supra.

■ Appellant's final argument is that the liquidation of the instant imported merchandise was in violation of Customs Regulations, i. e., 19 CFR 16.10a,* because classification of the imported chain belts was not in compliance with the abstracted T.D. 68–77(3), supra. It should suffice to merely point out that such an abstract is not a "published decision," within the context of 19 CFR 16.10a(b), which could establish, under the provisions of 19 CFR 16.10a(c), a uniform practice within the meaning of section 315(d). Borneo Sumatra Trading Co. v. United States, 56 Cust.Ct. 166, C.D. 2624 (1966). Such abstracts, as T.D. 68–77(3), supra, are "published as a matter of information and guidance" and not for the purpose of establishing a practice in accordance with 19 CFR 16.10a(b). See T.D. 72–8, 6 Cust.Bull. 10 (1972), for an example of a "published decision" within the context of 19 CFR 16.10a.

Accordingly, the judgment of the Customs Court is affirmed.

* Now 19 CFR 152.14.

MARKEY, Chief Judge (concurring).

Though the opinion of the lower court and the parties here express substantial concern for the presence or absence of a "finding" by the Secretary or his delegate under § 315(d), I view such consideration as premature. The first consideration must be the existence or nonexistence of an established uniform practice.

A uniform practice which did not exist could never have been "found." A uniform practice which did exist should have been found.

If a uniform practice does exist and the Secretary desires to raise the duty he must follow § 315(d). The making of a finding that a uniform practice exists is the first step under § 315(d).

If a uniform practice does not exist the Secretary is perfectly free to raise the duty and the question of his compliance with § 315(d) does not arise.

Appellant jumps the gun in equating the abstract to a "finding." * In effect appellant is arguing that the Secretary took the first step under § 315(d), i. e., making a "finding," but failed to take the subsequent steps under § 315(d). The abstract clearly does not constitute such a "finding."

The government, on the other hand, argues that the Secretary need not follow the requirements of § 315(d) because he did not make a "finding." To so hold would render § 315(d) a nullity in the hands of a Secretary choosing to refrain from ever making a finding. Avoiding the first step in a procedure provides no excuse for avoiding the entire procedure.

In Asiatic Petroleum Corp. v. United States, 449 F.2d 1309, 59 CCPA 20 (1971), the Acting Commissioner's letter had recognized the existence of a uniform practice. Thus *evidence* of a uniform practice existed. To the extent that our opinion in *Asiatic* calls such evidence a "finding" in the sense of § 315(d), that opinion is, in my view, misleading.

The initial burden of appellant in this case was to establish the existence of a uniform practice. He failed to carry that burden. On that basis, and on it alone, I would affirm the judgment of the court below.

MILLER, Judge (concurring).

I agree with the result reached by the majority, but do not agree that the "key" issue is whether the Secretary of the Treasury made a *finding* of an established and uniform practice for purposes of section 315(d).[1] No such finding is required to give appellant relief under 19 CFR 16.10.[2]

The "key" issue is whether appellant sustained its burden of proving that the

---

* Whether the abstract was a "decision" as envisaged in 19 CFR 16.10a is a question that appears nowhere in the complaint, in the answer, or in the opinion of the Customs Court under review. It should not, therefore, be considered by us. Salentine & Co. v. United States, 450 F.2d 908, 59 CCPA 26 (1971).

1. Section 315(d) provides as follows:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

2. *§ 16.10 Change in classification or value; higher or lower rate; effective date.*

(a) If there is an established and uniform practice at the various ports, a change in classification resulting in a higher rate of duty, except as the result of a court decision, shall be made only upon the Bureau's instructions and shall be applicable only to merchandise entered for consumption after the expiration of 90 days after the date of the publication of the Bureau's instructions in the Treasury Decisions. In the case of merchandise entered for warehouse, such change shall apply to goods withdrawn for consumption after the expiration of such 90-day period, provided the warehouse entry is unliquidated or can be reliquidated within 90 days after the date of liquidation. [Footnote deleted.]

rate of duty contended for was applicable to its merchandise "under an established and uniform practice." Its major argument is that T.D. 68–77(3),[3] an abstract of a Customs Service decision, presumptively established such a uniform practice and that the presumption has not been rebutted. In support of its assigned error that the Customs Court failed to hold and decide that it had "established an established and uniform practice, within the meaning of Section 315(d)," it cites 19 CFR 16.10a(c), which provided:

> Any decision published pursuant to paragraph (b) of this section shall be

deemed to establish a uniform practice within the meaning of section 315(d), Tariff Act of 1930, as amended.[4]

This court is required to take judicial notice of the regulations. 44 U.S.C. § 1507. See Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). However, I am persuaded that the Treasury Department used the word "decision" advisedly and did not intend to include an *abstract* of a decision, which ordinarily would not be expected to include all of the facts needed to establish a uniform practice throughout the Customs Service. See Borneo Sumatra Trading Co. v. United States, 56

---

**3.** T.D. 68–77(3) *Chains of base metal. Chain belts.*—Aluminum ladies belts, consisting of 36 inch lengths of aluminum chain with a small brass hook attached to one of each length, classifiable under the provision for Chain and chains * * * of base metal not coated or plated with precious metal: * * * Other, in *item 652.38*, TSUS. Bureau letter dated February 19, 1968. (526.814)

**4.** 19 CFR 16.10a in its entirety provided:

· *§ 16.10a Tariff classification of prospective imports.*

(a) Any prospective importer or foreign exporter may apply in writing to the Commissioner of Customs, Washington, D. C. 20226, for a ruling as to the tariff classification of any article which he intends to import into or ship to the United States in commercial quantities. The application shall contain a full description of each article. The application shall also give the following information, unless it is clear that it will be of no value in determining the tariff classification of the article: (1) The respective quantities and values of the component materials of which the article is composed; (2) information as to its chief use and commercial designation in the United States; and (3) any specifications, analyses, or other information deemed necessary to a tariff classification of the article. Whenever practicable, a sample of the article should be submitted with the application.

(b) If the Commissioner is satisfied (1) that the application is made in good faith by an importer or foreign exporter who is properly and directly concerned with the tariff classification of the article described; (2) that the information submitted or otherwise available is adequate for a considered decision; and (3) that the ruling applied for is not already covered by a controlling published decision, the Commissioner will rule on

the tariff classification of the article. A copy of the decision will be mailed to the applicant. The decision will be published in the weekly Treasury Decisions if it will affect a substantial volume of imports or if it is for any other reason of sufficient importance to justify such publication.

(c) Any decision published pursuant to paragraph (b) of this section shall be deemed to establish a uniform practice within the meaning of section 315(d), Tariff Act of 1930, as amended. The decision will not be changed by a further ruling of the Commissioner to impose higher duties on such an article unless the prior decision should prove to be clearly wrong. When it appears to the Commissioner that a correct interpretation of the law may require such a ruling, notice that the prior ruling is under review will be published in the Federal Register so that the parties in interest will have an opportunity to make such written submissions as they desire, within a period which will be specified in the notice, with respect to the correctness of the contemplated action. If after the consideration of such submission as may be received the Commissioner issues a ruling imposing higher duties, it will be effective only as to merchandise entered for consumption or withdrawn from warehouse for consumption on or after the expiration of 90 days after the date of publication of such ruling in the weekly Treasury Decisions.

(d) The notice procedure outlined in paragraph (c) of this section will be applied also in any other case in which the Commissioner believes that a correct interpretation of the law may require the issuance of an administrative ruling imposing higher duties on an imported article than has been assessed under an established and uniform practice. (Secs. 315, 502, 46 Stat. 695, as amended, 731; 19 U.S.C. 1315, 1502)

[Footnote deleted.]

Cust.Ct. 166, 173–74, C.D. 2624 (1966). It should be noted that this regulation was promulgated on November 2, 1950, after issuance of the T.D. abstracts considered by this court in United States v. Electrolux Corp., 46 CCPA 143, 145, C.A.D. 718 (1959), referred to in appellant's brief.

With respect to appellant's argument that T.D. 68–77(3) established a uniform practice for purposes of 19 CFR 16.10, I am not persuaded that T.D. 68–77(3) is sufficient to provide a presumption of a "uniform and established practice," particularly in light of T.D. 68–245(11),[5] issued some six months later. Moreover, appellee's point, that appellant has failed to prove that its gold-colored aluminum chain belts with decorative patterns stamped on the links are the same as the aluminum chains covered by T.D. 68–77(3), is well taken.

Accordingly, appellant does not benefit from any "presumption" and has failed to sustain its burden of proof. The decision of the Customs Court must, therefore, be affirmed.

5. T.D. 68–245(11) *Jewelry and related articles. Chain belts.*—Decorative women's belts, composed of one or more sections of brass chain joined together by an ornamented clasp with brass tassels, used chiefly as a means of adorning dresses, classifiable under the provision for Jewelry and other objects of personal adornment * * *: * * * Other, in *item 740.38*, TSUS. *Item 652.36*, TSUS, not applicable in view of the general rule of customs law that a designation by use prevails over an *eo nomine* provision (C.A.D. 51). Bureau letter dated September 6, 1968. (455.46)