**RANK PRECISION INDUSTRIES, INC., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Appeal No. 80–39.**

United States Court of Customs and Patent Appeals.

Aug. 27, 1981.

Allan H. Kamnitz, Kenneth N. Wolf, New York City, for appellant.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, New York City, Attorney in charge, and Sidney N. Weiss, New York City, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MILLER, Judge.

This is an appeal from the judgment of the United States Customs Court (now the United States Court of International Trade) in *Rank Precision Industries, Inc. v. United States*, —— Cust.Ct. ——, C.D. 4866, 498 F.Supp. 1348 (1980), dismissing appellant's protest without affirming the classification by the District Director of Customs of the involved merchandise under item 708.23 [1] of the Tariff Schedules of the United States ("TSUS"). The court held the merchandise properly classifiable under item 708.89 [2] as argued by appellee ("government") and denied classification under item 685.10 [3] as argued by appellant. We reverse.

## BACKGROUND

The imported merchandise is a television camera lens system termed a "Varotal 30." Due to our disposition of this case under 19 U.S.C. § 1315(d) ("section 315(d)"),[4] no further description of the goods is necessary.

---

1. Schedule 7, Part 2 provides in pertinent part:
   Subpart A — Optical Elements, Spectacles, Microscopes, and Telescopes, Optical Goods Not Elsewhere Provided for
   * * * *
   Lenses, prisms, mirrors, and other optical elements, all of the foregoing whether mounted or not mounted:
   * * * *
   Mounted:
   Lenses:
   * * * *
   708.23  Other . . . . . . . . . . . . . . .  12.5% ad val.

2. *See* note 1 *supra*; Schedule 7, Part 2, Subpart A further provides:
   Optical appliances and instruments not provided for elsewhere in part 2 of this schedule * * *
   * * * *
   708.89  Other appliances and instruments . . . . . . . . . .  22.5% ad val.

3. Schedule 6, Part 5 provides in pertinent part:
   Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras * * * and parts thereof:
   685.10  Television cameras, and parts thereof . . . . . . .  6% ad val.

4. In pertinent part, 19 U.S.C. § 1315 provides:
   Effective date of rates of duty
   . . . .
   Effective date of administrative rulings resulting in higher rates
   (d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the

The merchandise was entered at the port of Chicago, Illinois, on June 25, 1974, and was liquidated on July 19, 1974. The District Director of Customs classified the merchandise as a mounted lens under item 708.-23, TSUS.

In response to a written request of March 26, 1974,[5] the Director, Classification and Value Division ("Director"), in a letter dated August 31, 1976, stated:

Dear Mr. [deleted from exhibit]:

Your letter of March 26, 1974, concerned the tariff classification of motorized television lenses for industrial television cameras produced in West Germany. Brochures were submitted for our examination.

The merchandise in question is referred to as the [deleted from exhibit] and the [deleted from the exhibit]. These are motorized zoom television lenses for use in closed circuit vidicon television cameras. The television lenses are controlled by three motors, and power is transmitted to the lens elements and the iris by a system of cables which are attached to the television camera and the television lens.

You indicate that the subject merchandise can be used only with a television camera and that it was previously classifiable under the provision for parts of television cameras, in item 685.10, Tariff Schedules of the United States (TSUS),

with duty at the rate of 6 percent ad valorem rather than under the provision for mounted lenses, in item 708.23, TSUS, with duty at the rate of 12½ percent ad valorem. You urge that the former classification be sustained.

Because of prior liquidations, it appears that a uniform and established practice exists of classifying the merchandise in question under the provision for parts of television cameras, in item 685.10, TSUS, with duty at the rate of 6 percent ad valorem. Accordingly, the subject merchandise will be so classified pending further study as to whether a change in this practice is warranted.

Sincerely yours,

: District Director, Chicago
: District Director, Los Angeles
: Area Director, New York Seaport
 (Signed) R.X. ARNOLD
 for Salvatore E. Caramagne
 Director
 Classification and
 Value Division

In two other communications, the Director has taken a contrary position. In a letter to appellant dated February 15, 1973, the Director indicated that item 708.23, TSUS, applied to appellant's merchandise.[6] Also, in a letter of September 24, 1976, the "finding" in the above letter of August 31, 1976, was withdrawn by the Director, because, as suggested by both parties, the

---

date of publication in the Federal Register of notice of such ruling . . . .

**5.** Neither the request nor a copy thereof was in evidence before the Customs Court.

**6.** The full text of the letter is as follows:
 Mr. Doug Edison
 Rank Precision Industries, Inc.
 411 East Jarvis Avenue
 Des Plaines, Illinois 60018
 Dear Mr. Edison:
 Your letter of January 29, 1973, requested a reconsideration of the tariff statute of zoom lenses and rear units for television cameras, the subject of our letter of January 15, 1973, addressed to Mr. James A. Barnhart of Inglewood, California.
 Although these lenses and rear units may be used as essential parts of the particular television cameras [sic], in question, they cannot be classified under the provision for parts of

such cameras, as suggested. General Interpretive Note 10(ij) to the tariff schedules provides with respect to the classification of parts of an article that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." In view of the fact that item 708.23, Tariff Schedules of the United States, specifically provides for mounted lenses and other mounted optical elements, such as zoom lenses and rear units, the provision for parts of television cameras cannot apply in view of the expressed statutory provision.
 Sincerely yours,
 [s/Russell Arnold]
 for Director
 Classification and Value
 Division

Director wished to refrain from commenting upon matters pending before the Customs Court.[7]

The Customs Court determined that, as of the liquidation date (July 19, 1974), there was no section 315(d) "finding." It said:

Significantly, the official papers show that the entry in this case was made on June 25, 1974, and liquidated on July 19, 1974—*more than two years prior to the "finding" of an established and uniform practice,* as set forth in [the August 31, 1976, letter]. Consequently, it is obvious that at the time of importation in 1974 plaintiff could not have relied upon the section 315(d) "finding" made by Customs in 1976. Indeed, the statute is clear that the notice requirements for a change of practice is intended for the benefit of importers whose entries are made *after* a "finding" of an established and uniform practice. [Citation omitted.]

Before the Customs Court, appellant introduced evidence that, of 190 of their entries between 1970–72, 182 were liquidated under item 685.10, TSUS, and only 8 were liquidated as mounted lenses under item 708.23, TSUS. The government objected to this evidence on the ground that it was hearsay, because it was provided by a witness who had analyzed business records that were not in evidence; further, that it was not probative, because the entries covered four distinct classes of merchandise and there was no indication of how many entries consisted of merchandise like that involved in this case. The court said that the objection was well taken, but allowed the evidence to go in for "whatever weight it deserves." In its opinion, the court focused on the eight entries liquidated under 708.23, TSUS, and concluded that "rather than proving the existence of an established and uniform practice during 1970–72, [the witness's] testimony demonstrates that there was some ambivalence on the part of Customs respecting the appropriate classifica-tion for the merchandise." Accordingly, the Customs Court said that there was not *"in fact* an established and uniform practice during the years 1970–72 of classifying the merchandise as parts of television cameras under item 685.10, TSUS . . . ." (Emphasis supplied.)

Appellant argues that the Director's August 31, 1976, letter constitutes a "finding"; that the Director found an established and uniform practice existed of classifying the imported merchandise under item 685.10, TSUS; that, by reference to a requesting letter of March 26, 1974, the Director acknowledged that the practice existed as of said date; and that, because the Director has not complied with the notice provisions of section 315(d) and because appellant's date of entry is after March 26, 1974, the Customs Service is required to liquidate the entries in question under item 685.10, TSUS, and the July 19, 1974, liquidation is invalid. Finally, appellant argues that the eight entries liquidated under 708.23, TSUS, are *de minimis* and insufficient to negate the existence of an actual practice.[8]

The government argues that any "finding" in the August 31, 1976, letter should have no bearing on the outcome of this litigation, because: it was withdrawn by the Director, due to pending litigation in the Customs Court, by the Director's September 24, 1976 letter; it was based upon insufficient information and appellant's evidence of an *actual* established and uniform practice is not probative; the Director, in his February 15, 1973, letter, stated that item 708.23, TSUS, applied; and section 315(d) is "prospective in nature" and requires reliance by the importer on the "finding." Finally, the government argues that use of the phrase "it appears" before the statement that "a uniform and established practice exists," indicates that a "finding" of such a practice was not intended.

---

7. The letter of September 24 does not appear in the certified record on appeal.

8. Optical Imports, Inc., importer and sole distributor in the United States of a motorized television lens system manufactured by a French concern, has presented briefs as *amicus curiae* which contain arguments paralleling those of appellant.

## OPINION

■ As to whether the Secretary of the Treasury through his delegate, the Director,[9] made a finding that item 685.10, TSUS, has been applied in classifying the subject merchandise under "an established and uniform practice," we agree with appellant that there was such a finding. Although the August 31, 1976, letter was not directed to appellant, the government does not question that it clearly describes appellant's merchandise.[10] Contrary to the Customs Court's view that "[t]his letter, somewhat equivocally, states [such a practice exists]," we are persuaded that the Director made an affirmative and unequivocal finding of an established and uniform practice. With respect to the words, "it appears," these must be read in context. The letter's next sentence reads: "Accordingly, the subject merchandise will be [classified under item 685.10, TSUS,] pending further study as to whether a change in this practice is warranted." A statement made by this court in *Asiatic Petroleum Corp. v. United States*, 59 CCPA 20, 23, C.A.D. 1029, 449 F.2d 1309, 1312 (1971) is particularly appropriate: "[I]f, as the [government] argues, the letter of [August 31] was not intended to be a 'finding' under section 315(d), then certainly the [Director] could have found a better way to express himself."

■ With respect to the government's argument that in the letter of February 15, 1973, the Director indicates that item 708.23 applies to appellant's merchandise, the answer is that the letter is not relevant; similarly, appellant's evidence of an *actual* established and uniform practice during the years 1970–72 is not relevant. The reason is that the merchandise was not liquidated until July 19, 1974, and the Director was certainly aware of his own correspondence prior to his finding in his August 31, 1976, letter. Further, the decision to make or not to make a finding of an established and uniform practice is a matter committed solely to agency discretion. It is not for this court to examine the Director's reasons for, or the correctness of his decision in, making a finding, absent a clear abuse of discretion. See *Asiatic Petroleum Corp. v. United States*, 59 CCPA at 23, 449 F.2d at 1312; *Washington Handle Co. v. United States*, 34 CCPA 80, 86, C.A.D. 346 (1946).

Regarding the contention that the finding was withdrawn by the Director in the letter of September 24, 1976, section 315(d) specifies the procedure for changing an established and uniform practice that has been found to exist, and more than mere "withdrawal" by the Director is specified.

■ Finally, the government's argument that reliance by the importer on the "finding" is necessary and that section 315(d) is "prospective in nature" finds no support in section 315(d). Indeed, if such were the case, that section would be rendered "a nullity in the hands of a Secretary choosing to refrain from ever making a finding."[11] *Ditbro Pearl Co. v. United States*, 62 CCPA 95, 97, C.A.D. 1152, 515 F.2d 1157, 1159 (1975) (Markey, C. J., concurring).

Although the August 31, 1976, letter does not specify the time frame of the established and uniform practice that was found to exist, it refers to "prior liquidations" and to previous classifications brought to the

---

**9.** Customs Delegation Order No. 1 (Revision 1), T.D. 69–126, 3 Cust.Bull. (1969) 377–380, as amended by T.D. 72–42, 6 Cust.Bull. (1972) 60–61 and by T.D. 72–321, 6 Cust.Bull. (1972) 667.

**10.** This letter was obtained from the government by appellant during discovery.

**11.** We note that publication of the "finding" in the Customs Bulletin was not necessary in this case because this action falls directly under 19 U.S.C. § 1315(d) and is not governed by 19 CFR 177.10. *See Martin Brokerage Co. v. United States*, 36 Cust.Ct. 35, C.D. 1750 (1956). There

is "no requirement in section 1315(d) regarding the form and manner in which the Secretary's finding of 'an established and uniform practice' is to be made. The statutory requirement is only that such a finding be made.... There is nothing in section 1315(d) which requires the Secretary to make *his* finding public or even to publish *his* finding." *Asiatic Petroleum Corp. v. United States*, 64 Cust.Ct. 47, 59–60, C.D. 3958 (1970) (Richardson, Judge, dissenting). On appeal, the dissenting opinion was adopted by this court as its own. 59 CCPA 20, 23, C.A.D. 1029, 449 F.2d 1309, 1312 (1971).

Director's attention by a letter of March 26, 1974. We are satisfied that this is an acknowledgement that an established and uniform practice was in effect at the time of the March 26, 1974, letter. Since the entries in question took place approximately three months after the March 26, 1974, letter, they should have been liquidated under item 685.10, TSUS, in accordance with section 315(d). The liquidations under item 708.23, TSUS, were, therefore, improper. *Asiatic Petroleum Corp. v. United States, supra.*

Accordingly, the judgment of the Customs Court is reversed, and appellant's protest is sustained.