**HERAEUS–AMERSIL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–1–00100.**

United States Court of
International Trade.

Dec. 13, 1984.

Fitch, King & Caffentzis, New York City (Richard C. King, New York City, on the motion), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, Commercial Litigation Branch, New York City (John J. Mahon, New York City, on the cross-motion), for defendant.

*Memorandum Opinion and Order on Plaintiff's Motion to Strike and Defendant's Cross-Motion to Dismiss in Part.*

CARMAN, Judge:

Plaintiff moves pursuant to Rules 8(c) and 12(f) of the Rules of the United States

Court of International Trade [1] for an order striking certain denials from the defendant's answer. Defendant opposes the motion and cross-moves to dismiss in part for failure to state a claim upon which relief can be granted pursuant to rule 12(b)(5).

The underlying dispute pertains to the proper classification of certain imported merchandise known as "fused quartz" or "fused silica." The United States Customs Service (Customs) classified the merchandise under item 540.67 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9.[2] Plaintiff claims that classification is proper under items 540.11 and 540.41 of the TSUS.[3] Plaintiff, in supporting its proposed classification, claims that at the relevant times "an established and uniform practice" existed within the meaning of 19 U.S.C. § 1315(d) (1982) with respect to the classification of fused quartz and fused silica.[4] Under plaintiff's theory, Customs could not deviate from that practice until 30 days after publication of a notice in the Federal Register.

Defendant denies that an established and uniform practice existed. Defendant maintains that absent a "finding" that such a practice exists by the Secretary of the Treasury, or a ruling published by Customs pursuant to 19 C.F.R. § 177.10(b) (1983),[5]

---

1. Rule 8(c) of the Rules of this Court provides in relevant part:

> **Defenses—Form of Denials.** A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as true and material and shall deny only the remainder....

Rule 12(f) in part reads:

> **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense ....

2. Item 540.67 of the TSUS, as modified, provides:

> Optical glass in any form, including blanks for spectacle lenses and for other optical elements; non-optical-glass blanks for corrective spectacle lenses; synthetic optical crystals in the form of ingots, segments of ingots, sheets, or blanks for optical elements; all the foregoing not optically worked; polarizing material, in plates or sheets, not cut to shape or mounted for use as polarizing optical elements;
> ....
> Other optical glass and synthetic optical crystals; polarizing material ...... 25% ad val.

3. Item 540.11, TSUS, as modified, provides:

> Glass, in the mass; glass, crushed, powdered, or flaked (frostings); and waste or scrap glass; all the foregoing except glass provided for in items 540.21 and 540.27:

> Glass in the mass:
> Containing over 95 percent silica by weight ................ 7.5% ad val.

Item 540.41, TSUS, as modified, provides:
> Glass rods, tubes, and tubing, all the foregoing not processed:

> Containing over 95 percent silica by weight .................. 7% ad val.

4. 19 U.S.C. § 1315(d) (1982) provides:

> No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties, or the imposition of countervailing duties under section 1303 of this title.

5. 19 C.F.R. § 177.10(b) (1983) provides:

> *Rulings regarding a rate of duty or charge.* Any ruling regarding a rate of duty or charge which is published in the Customs Bulletin will establish a uniform practice. A published ruling may result in a change of practice, it may limit the application of a court decision, it may otherwise modify an earlier ruling with respect to the classification or valuation of an article or any other action found to be in error or no longer in accordance with the current views of the Customs Service, or it may revoke a previously-published ruling or a previously-issued ruling letter. No ruling published under the provisions of this section will have the effect of changing either an earlier published ruling or a practice established by other means by imposing a higher

no established and uniform practice can arise. Defendant therefore concludes that plaintiff's claims as to a uniform practice fail as a matter of law and must be dismissed.

As is evident from paragraph 37 of the complaint, plaintiff believes that because similar merchandise at various ports has been uniformly classified under items 540.-11 and 540.41 since 1963, that this practice constitutes an "established and uniform practice" within section 1315(d).

Defendant's answer at paragraph 40 offers a simple "Denied" in response to the established and uniform practice claim and further avers that no section 1315(d) "finding" has ever been made. Plaintiff moves to strike this denial, as well as the similar denial in paragraph 42 of the answer, on the ground that the responses constitute defenses that are insufficient as a matter of law.

In response, defendant claims simply that the responses in paragraphs 40 and 42 are sufficient as a matter of law. Defendant also cross-moves to dismiss that part of the complaint relating to an established and uniform practice, paragraphs 35 through 42.

The Court first addresses defendant's motion to dismiss in part because resolution of this issue impacts largely upon plaintiff's motion to strike.

## I. AN ESTABLISHED AND UNIFORM PRACTICE

Underlying defendant's motion to dismiss in part is the assumption that "an established and uniform practice" under section 1315(d) can only arise from a formal "finding" by the Secretary or by a "ruling" published pursuant to 19 C.F.R. § 177.10(b) (1983). Plaintiff, on the other hand, asserts that such a practice can be established by actual liquidations over a period of time at many ports.

Subsection (d) of section 1315 was added to the Tariff Act of 1930 by the Customs Administrative Act of 1938, ch. 679, § 6, 52 Stat. 1077, 1081 (codified as amended at 19 U.S.C. § 1315(d) (1982)). Legislative history pertaining to the 1938 Act is sparse, but reveals Congress' desire "to facilitate efficient administration of the customs laws." S.Rep. No. 1465, 75th Cong., 3d Sess. 6 (1938). The proposed enactment was termed neither "an importers' bill nor ... a domestic manufacturers' bill." *Id.* Nevertheless, it would appear that Congress, in subsection (d), by codifying a then-existing administrative practice, was attempting to lend certainty to the importing process. The importing community is thus aided by the provision's remonstrance that an established and uniform practice not be changed absent public notice. *See Customs Administrative Bill: Hearings on H.R. 6738 Before the House Comm. on Ways and Means*, 75th Cong., 1st Sess. 132 (1937) (analysis submitted by Treasury Department).

Earlier cases suggest that a section 1315(d) "established and uniform practice" can be predicated on uniform classifications and liquidations at various ports over a period of time. *See, e.g., Asiatic Petroleum Corp. v. United States*, 59 CCPA 20, 23, 449 F.2d 1309, 1312 (1971) (adopting *Asiatic Petroleum Corp. v. United States*, 64 Cust.Ct. 47, 58, 309 F.Supp. 1006, 1009 (1970) (Richardson, J., dissenting)); *Biddle Sawyer Corp. v. United States*, 50 CCPA 85, 92, 320 F.2d 416, 422 (1963); *B.R. Anderson & Co. v. United States*, 47 Cust.Ct. 215, 226–28, 201 F.Supp. 319, 327–28 (1961). In *Biddle Sawyer*, the Court of Customs and Patent Appeals expressly considered the issue of whether uniform classification of a certain chemical, in fact, existed. The court concluded:

We find nothing in the testimony or in the exhibits which supports appellant's contention that there was an established and uniform practice of classifying merchandise of the quality of the imported

rate of duty or charge on an article unless the earlier ruling or practice has been determined to be clearly wrong.

[merchandise] under paragraph 5. Therefore it was not necessary that a notice be published pursuant to sections 315(d) or 16.10(a).

*Biddle Sawyer,* 50 CCPA at 92, 320 F.2d at 422. In fact, many cases have passed on the question of whether an actual uniform practice existed at the relevant times.[6] One must therefore conclude that the issue was meaningful to the determination. Otherwise, it would seem that the courts were engaging in useless formulations.

In addition, a predecessor regulation to 19 C.F.R. § 177.10(b), provided that "[i]f there is an established and uniform practice *at the various ports,*" no higher duty rate could be assessed without public notice. Customs Regulations of 1943, § 16.-10(a) (emphasis added); *see B.R. Anderson & Co. v. United States,* 47 Cust.Ct. at 227, 201 F.Supp. at 327 ("[i]t is clear that this regulation was issued pursuant to section 315(d) of the Tariff Act of 1930"). Thus, it was Customs' understanding, originally at least, that section 1315(d) envisioned an "actual" established and uniform practice.

Further, the hearings before the House Ways and Means Committee reflect a general understanding of section 1315(d) in accord with that outlined above.

We recognize that this section is legislation to legalize that which has been the practice of the Department for a number of years, namely, where there has existed a uniform practice, sanctioned by the customs authorities for a number of years, before a change of rate or classification is made by the Department, the Department will allow before placing the same in effect 30 days' notice after publication of such change. While we recognize the existence of this practice, it has been carried on, we may say, as a matter of executive leniency, but there has been no sanction of law.

*Hearings, supra,* at 212–13 (statement of American Tariff League).

■ Defendant's opposition to the motion of an actual established and uniform practice stems from its blurring of cases where the existence of a section 1315(d) finding was in issue.[7] To be sure, when the Secretary makes a finding that an established and uniform practice either exists or does not exist, that determination is within the Secretary's congressionally designated discretion. *See Washington Handle Co. v. United States,* 34 CCPA 80, 86 (1946). Such a determination cannot be disturbed by a court, except, perhaps, for an abuse of that discretion. *See Rank Precision Industries, Inc. v. United States,* 68 CCPA 78, 84, 660 F.2d 476, 480 (1981). In the absence of an affirmative or negative finding, however, the Court, when properly presented with the issue, may resolve it. In this connection, I well heed Chief Judge Markey's stern admonition in the *Ditbro Pearl* case that to hold otherwise "would render § 315(d) a nullity in the hands of a Secretary choosing to refrain from ever making a finding." *Ditbro Pearl Co. v. United States,* 62 CCPA 95, 97, 515 F.2d 1157, 1159 (Markey, C.J., concurring).[8]

---

**6.** Section 1315(d) was designed to promote uniformity in classification matters. It does not apply to other customs determinations, such as appraisement. *Peugeot Motors of America, Inc. v. United States,* 8 CIT ——, at ——, 595 F.Supp. 1154 at 1157 (1984).

**7.** There is no strict formula for issuing a "finding" under section 1315(d). Such a finding can take many forms, and, indeed, the cases reflect this. *See Rank Precision Indus., Inc. v. United States,* 68 CCPA 78, 660 F.2d 476 (1981) (letter from Division Director); *Ditbro Pearl Co. v. United States,* 62 CCPA 95, 515 F.2d 1157 (1975) (abstracted Treasury Decision); *Asiatic Petroleum Corp. v. United States,* 59 CCPA 20, 449 F.2d 1309 (1971) (letter from Acting Commissioner of Customs). The proper test for a section 1315(d) finding is merely whether a clear impression is given through appropriate language that such a finding is being made. *Asiatic Petroleum,* 59 CCPA at 23, 449 F.2d at 1312; 64 Cust.Ct. at 59, 309 F.Supp. at 1014 (Richardson, J., dissenting).

**8.** Recently, in *Siemens America, Inc. v. United States,* 692 F.2d 1382 (Fed.Cir.1982), the Federal Circuit (formerly the Court of Customs and Patent Appeals) indicated that a formal "finding" is not a precondition to application of section 1315(d). *See id.* at 1384. The court assumed for argument's sake that a finding was not necessary and then considered plaintiff's offer of

Defendant objects to the Court making such determinations, contending that "there is no law to apply." "There are no criteria by which to gauge how long a practice must exist or how uniform it must be." Defendant's Memorandum In Opposition, at 24. This view is obviously unfounded since courts have long considered such issues both under section 1315(d), *Biddle Sawyer Corp. v. United States*, 50 CCPA 85, 92, 320 F.2d 416, 422 (1963), and under the interpretive principle that a "long-established administrative practice," if found to exist, will bear upon an interpretation of tariff laws, *Commonwealth Oil Refining Co. v. United States*, 60 CCPA 162, 174, 480 F.2d 1352, 1361 (1973). Indeed, courts have long been guided in this area by inquiring whether the practice was "known, long continued, uniform and general." *Rapken & Co., Ltd. v. United States*, 25 CCPA 268, 274 (1938).

■ In accordance with the above, defendant's motion to dismiss that part of the complaint relating to an established and uniform practice must be denied, since although no finding or published ruling is alleged, plaintiff may show an established and uniform practice under section 1315(d) by actual uniform liquidations at the various ports over a period of time.

## II. MOTION TO STRIKE CERTAIN DEFENSES

Having determined that plaintiff may be allowed to demonstrate whether an actual section 1315(d) practice existed during the relevant times, the Court now turns to plaintiff's motion to strike certain denials contained in the defendant's answer.

Plaintiffs' motion relates to the following:

proof on the question. Because proof on the issue of an established and uniform practice was found wanting, the court held against the importer.

The case strongly suggests that an actual practice is cognizable under section 1315(d). By considering the sufficiency of the evidence on the point, the Federal Circuit implied that with

## COMPLAINT

37. "Optical quality fused silica" on or after August 31, 1963, and until liquidation of the entries in issue herein, was uniformly classified by various District Directors or Area Directors of Customs as "glass in the mass: Containing over 95 percent silica by weight" under item 540.11, TSUS, or as "Glass rods, * * *, all the foregoing not processed; Containing over 95 percent silica by weight" under item 540.41, TSUS depending upon its form as imported.

. . . .

40. The uniform classification as described in 37, above, constitutes an actual established and uniform practice.

. . . .

42. Liquidation under item 540.67, TSUS, as amended, is improper where an actual established and uniform practice existed at the time of liquidation, and no notice pursuant to § 315(d) has been published.

## ANSWER

40. Denied. Further, defendant avers that the Secretary of the Treasury or his delegate have never made a finding pursuant to 19 U.S.C. § 1315(d) that an established and uniform practice existed regarding the tariff classification of the merchandise in issue.

. . . .

42. Denied.

Plaintiff contends that the defendant, by simply denying the allegation of an established and uniform practice, severely hampers discovery efforts and motion practice. Plaintiff urges that the "defense" in paragraph 40, if it be one, must consist of more than a simple denial.[9]

adequate proof, such a practice can be found, in fact, to exist.

9. The second sentence of paragraph 40 of defendant's answer is largely superfluous since the court has determined that a formal "finding" by the Secretary is not a prerequisite to the operation of 19 U.S.C. § 1315(d).

The Court is therefore called upon to weigh the legal sufficiency of the denials contained in paragraphs 40 and 42 of defendant's answer.

Rule 8(c) of the Rules of this Court provides in part that "[a] party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." The rule, patterned after Rule 8(b) of the Federal Rules of Civil Procedure, is designed to apprise a plaintiff of the defenses with which he will have to contend at trial. Lawyers Cooperative Publishing Co., *Federal Procedure* § 62.56, at 230 (J. Goger man. ed. 1984); *see White v. Smith,* 91 F.R.D. 607, 608 (W.D.N.Y.1981). Motions directed to the sufficiency of denials and defenses, such as motions to strike or for a more definite statement, are highly disfavored. *Krauss v. Keibler-Thompson Corp.,* 72 F.R.D. 615, 618 (D.Del.1976). Courts traditionally have allowed such motions only where under no circumstances could the defense prevail, *Green Mountain Power Corp. v. General Electric Corp.,* 496 F.Supp. 169, 171 (D.Vt.1980), where the defense is clearly "insufficient as a matter of law," *Anchor Hocking Corp. v. Jacksonville Electric Corp.,* 419 F.Supp. 992, 1000 (M.D.Fla.1976), or where the defense "bear[s] no possible relation to the claim asserted," *Blenke Brothers Motors, Inc. v. Chrysler Corp.,* 189 F.Supp. 420, 422 (N.D. Ill.1960).

Given the stringency of the standard for striking defenses on insufficiency grounds, plaintiff's motion must be denied. Paragraph 40 of the complaint, operative here, states that the events described in paragraph 37 constitute an established and uniform practice. Defendant's answer, in relevant part (*see supra* note 9) simply states, "Denied." In *Berkey Technical Corp. v. United States,* 71 Cust.Ct. 275, 380 F.Supp. 786 (1973), the court was confronted with a similar question. In that case, plaintiff's complaint read: "Said articles are not illuminating." Defendant's answer was simply: "Denied." There, Judge (now Chief Judge) Re held that the answer was sufficient as a matter of law, noting that while "a more elaborate answer could have been drafted ..., the denial was neither equivocal nor ambiguous." *Id.,* 71 Cust.Ct. at 276, 380 F.Supp. at 788.

By the same token here, the complaint asserts that certain acts on the part of Customs constituted an established and uniform practice under 19 U.S.C. § 1315(d). The effect of defendant's denial is to state that those acts do not constitute such a practice. The "denied" is a "clear and positive response that categorically denie[s] plaintiff's allegation." *Berkey Technical Corp.,* 71 Cust.Ct. at 276, 380 F.Supp. at 788. Defendant's answer at paragraph 40 operates either to deny that the facts alleged constitute an established and uniform practice or that the facts themselves, as alleged, are disputed.

Plaintiff's entreaties to the effect that it cannot fashion appropriate motion practice or discovery must be rejected. The issue has been framed adequately by the pleadings. It now devolves on plaintiff, through appropriate discovery, to substantiate the claim asserted in paragraphs 35 through 42 of the complaint.

Plaintiff's motion to strike certain defenses contained in defendant's answer is denied; defendant's cross-motion to dismiss in part is also denied.

Order accordingly.