**HERAEUS–AMERSIL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 81–1–00100.**

United States Court of International Trade.

Aug. 27, 1985.

Fitch, King & Caffentzis, New York City (Richard C. King and James Caffentzis, New York City, on motion), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (John J. Mahon, New York City, on cross-motion), for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge.

Defendant moves, pursuant to rules 52 and 59 of the rules of this Court, for amendment and/or rehearing (clarification) of this Court's memorandum opinion and judgment of June 6, 1985, 612 F.Supp. 396. Plaintiff consents to this motion. The Court agrees that there is need for clarification, therefore grants the motion and vacates the prior opinion and judgment, Slip Op. 85–60.

In Slip Op. 85–60, the Court granted plaintiff's motion for summary judgment, but limited its holding to entry number 188,596, which was the only entry covered by the original summons in Court No. 81–1–00100. However, during the course of the litigation, additional entries were severed from other cases and consolidated with Court No. 81–1–00100, which became designated as Consolidated Court No. 81–1–00100. All entries the subject of this consolidated action are thus:

| Court Number | Protest Number | Entry Number | Date of Entry | Date of Liquidation |
|---|---|---|---|---|
| 80–9–01139–S | 1001–8–004428 | K350112 | 3/5/76 | 1/6/78 |
|  |  | K458138 | 7/2/76 | 1/6/78 |
|  |  | K499020 | 8/9/76 | 1/6/78 |
|  |  | K522573 | 8/31/76 | 1/6/78 |
|  |  | K522628 | 8/31/76 | 1/6/78 |
| 81–1–00100 | 1001–8–010167 | 188596 | 12/12/76 | 5/12/78 |
| 82–9–01243–S | 1001–0–011514 | 804694 | 4/13/81 | 7/31/81 |
|  |  | 804807 | 4/17/81 | 7/31/81 |
|  |  | 804885 | 4/27/81 | 7/21/81 |

The rationale of the Court's opinion in this case affects the disposition of the various entries differently. It is therefore necessary for the Court to explain in detail the application of its holding to the involved entries.

## NATURE OF THE CLAIM

In this action, which originally came before the Court on plaintiff's motion for summary judgment, plaintiff contends that its imported merchandise, known as "fused quartz" or "fused silica," should be classified under items 540.11 and 540.41 of the Tariff Schedules of the United States (TSUS). The basis of plaintiff's claim is that the more than 300 known liquidations of entries over a 10 year period of like or similar merchandise classified under the same claimed item numbers constitutes "an established and uniform practice" within

the meaning of 19 U.S.C. § 1315(d) (1982).[1] An established and uniform practice of classifying fused quartz and fused silica under items 540.11 and 540.41 would, according to plaintiff, preclude the United States Customs Service (Customs) from classifying the merchandise under item 540.67, TSUS, as it did in this case, because of the failure to follow the notice procedures prescribed by section 1315(d) prior to deviating from the alleged established and uniform practice.

Defendant, in cross-moving for partial summary judgment respecting plaintiff's section 1315(d) claim, contends that the notice requirement resulting from an established and uniform practice is predicated upon a "finding" of such practice by the Secretary of the Treasury.[2] Defendant claims that plaintiff has failed to prove that a uniform practice existed, but irrespective of such practice, plaintiff is not entitled to relief in the absence of a finding by the Secretary. Defendant therefore asserts it is entitled to summary judgment in its favor dismissing the uniform and established practice claim.

Defendant claims, in the alternative, that this Court lacks authority to determine whether a uniform and established practice existed; therefore, the case should be re-manded to the Secretary of the Treasury to make the appropriate affirmative or negative finding. The defendant requests the Court further to certify the question for an interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(1) (1982) should the Court grant any relief to plaintiff or adhere to the Court's earlier decision in *Heraeus-Amersil, Inc. v. United States*, 8 CIT ——, 600 F.Supp. 221 (1984) (denying defendant's motion to dismiss that part of the complaint relating to an established and uniform practice, and holding that plaintiff may show such practice under 19 U.S.C. § 1315(d) by actual uniform liquidations).

### STIPULATED FACTS

Plaintiff imports optical grade fused quartz or fused silica at the ports of Newark and John F. Kennedy International Airport (JFK). Upon the liquidation of plaintiff's optical types that were imported from Germany during March-December, 1976 and April, 1981, Customs classified the merchandise in issue under item 540.67, TSUS.[3] In the previous period of 1968 through November, 1977, Customs liquidated other entries of plaintiff's same optical types under items 540.11 and 540.41, TSUS.[4] Over 300 documented entries at the two ports mentioned above resulted in

1. 19 U.S.C. § 1315(d) (1982) provides:
   No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties, or the imposition of countervailing duties under section 1303 of this title.

2. The Customs regulations provide that a uniform practice may also be established by publication of a ruling pursuant to 19 C.F.R. § 177.10(b) (1984).

3. Item 540.67 of the TSUS, as modified by T.D. 68–9, provides:

Optical glass in any form, including blanks for spectacle lenses and for other optical elements; non-optical-glass blanks for corrective spectacle lenses; synthetic optical crystals in the form of ingots, segments of ingots, sheets, or blanks for optical elements; all the foregoing not optically worked; polarizing material, in plates or sheets, not cut to shape or mounted for use as polarizing optical elements;

\* \* \* \* \* \* \* \*

540.67 Other optical glass and synthetic optical crystals; polarizing material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25% ad val.

4. Item 540.11, TSUS, as modified by T.D. 68–9, provides:

Glass, in the mass; glass, crushed, powdered or flaked (frostings); and waste or scrap glass; all the foregoing except glass provided for in items 540.21 and 540.27:

classification and liquidation under these item numbers. All merchandise identical or similar to plaintiff's optical types was classified prior to December 30, 1977, under either item 540.11 or 540.41.[5] There is no evidence that any optical grade fused quartz/fused silica entered by plaintiff or any other importer was ever classified as "optical glass" under item 540.67, TSUS, or under its 1930 Tariff Act predecessor, prior to December 30, 1977. Further, there is no evidence of the importation of merchandise identical or similar to that the subject of this case at any port other than Newark or JFK.

From 1968 through November, 1977, at least five import specialists at the Newark and JFK ports of entry uniformly made advisory classifications of plaintiff's optical types under items 540.11 or 540.41. In 1977, however, another import specialist assumed advisory classification responsibility at JFK for plaintiff's optical types. This specialist made a new advisory classification which resulted in the change of classification to item 540.67.

The Secretary of the Treasury or his lawful delegee concededly made no "finding" under 19 U.S.C. § 1315(d) of whether an established and uniform practice existed as to the classification of optical grade fused quartz or fused silica. Accordingly, the Secretary never published, pursuant to section 1315(d), a notice of proposed change of practice in the classification of the merchandise at issue.

### OPINION

In *Heraeus-Amersil, Inc. v. United States*, 8 CIT ——, 600 F.Supp. 221 (1984),

Glass in the mass:
540.11   Containing over 95 percent
              silica by weight .........7.5% ad val.

Item 540.41, TSUS, as modified by T.D. 68–9, provides:

Glass rods, tubes, and tubing, all the foregoing not processed:
540.41   Containing over 95 percent
              silica by weight .........7% ad val.

this Court, in deciding defendant's motion to dismiss in part, considered whether a uniform and established practice could arise from uniform classifications of like merchandise over a period of time which would bind Customs unless the change in practice was executed pursuant to 19 U.S.C. § 1315(d). The Court held that the plaintiff could show an established and uniform practice by actual uniform liquidations, even though the Secretary of the Treasury had made no "finding" that such a practice existed. It is clear that the established and uniform practice Congress contemplated is antecedent to a finding. *Siemens America, Inc. v. United States*, 2 CIT 135, 138 (1981), *aff'd* 692 F.2d 1382 (Fed.Cir.1982). The applicability of section 1315(d) is thus not necessarily dependent upon a finding by the Secretary. *See Heraeus-Amersil*, 8 CIT at ——, 600 F.Supp. at 225. "In the absence of an affirmative or negative finding, ... the Court, when properly presented with the issue, may resolve it." *Id.* at ——, 600 F.Supp. at 224.

The controlling question now before the Court, then, is whether in light of the stipulated facts an *actual* established and uniform practice existed with respect to the classification of optical grade fused quartz or fused silica. In the briefs submitted in support of the cross-motions for summary judgment, and at oral argument, much of the argument of the parties was a rehash of the question regarding the necessity of a finding by the Secretary of the Treasury in order for an established and uniform practice to arise within the purview of section

5. This stipulated fact has been further clarified in the memoranda submitted by the parties in support of plaintiff's motion for amendment and/or rehearing. The first entry of merchandise liquidated pursuant to the new classification practice was entry number 522578. The merchandise, entered on August 6, 1976, was liquidated on December 30, 1977, under item 540.67, TSUS. Plaintiff's protest of that liquidation, filed March 30, 1978, is now part of a separate judicial action, Court No. 80–7–01138.

1315(d). This question was previously adequately briefed and decided by the Court. *See Heraeus-Amersil,* 8 CIT ——, 600 F.Supp. 221 (1984). The Court adheres to the rationale of its prior opinion which is the law of this case.[6] *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 788 (1981).

Precedents concerning what specifically constitutes an established and uniform practice under section 1315(d) are unfortunately sparse. Nevertheless, the Court can make the determination on a case-by-case basis according to certain guiding principles. *See* 8 CIT at ——, 600 F.Supp. at 225. Factors to be considered are the number of entries resulting in the alleged uniform classifications, the number of ports at which the merchandise was entered, the period of time over which the alleged uniform classifications took place, and whether there had been any uncertainty regarding the classification over its history. In essence, the question is whether a *uniform* and *established* practice existed that would lead an importer, in the absence of notice that a change in classification will occur, reasonably to expect adherence to the established classification practice when making an importation.

In this case, the classification of fused quartz/fused silica under items 540.11 and 540.41 spanned a period of at least 10 years. Over 300 liquidations at two ports under these item numbers have been documented. The parties have been unable to find any evidence of variant liquidations during the 10-year period or earlier. On the basis of this large number of past entries over the long time period involved, the Court finds that plaintiff was entitled to rely upon the continued classification of its optical types under items 540.11 and 540.41 absent published notice of a contemplated change in classification practice pursuant to section 1315(d).

The only authority directly on point indicates that the classification practice here has existed well beyond the time span required for an established and uniform practice. Thus, in *Emil Dienert v. United States,* 9 Cust.Ct. 411, Abs. 47,544 (1942), the court found that 5 to 8 years of classifying merchandise as a particular article constituted an established and uniform practice. Since there was no evidence that notice to impose a higher rate was published, the court held that "Treasury officials did not comply with the provisions of section 6, Customs Administrative Act of 1938 [19 U.S.C. § 1315(d)]," and that the action of the collector in classifying the articles under a new category was "without legal

---

6. The Court gleaned that Congress, in codifying a then-existing administrative practice by enacting section 1315(d) "was attempting to lend certainty to the importing process. The importing community is thus aided by the provision's remonstrance that an established and uniform practice not be changed absent public notice. [Citation omitted.]" *Heraeus-Amersil,* 8 CIT at ——, 600 F.Supp. at 223.

The Court held that implementation of this congressional intent was not necessarily dependent upon a finding by the Secretary of the Treasury. This conclusion was reached by looking at what had been considered in other cases decided under section 1315(d). Given that "many cases have passed on the question of whether an actual uniform practice existed," one is led to "conclude that the issue was meaningful to the determination. Otherwise, it would seem that the courts were engaging in useless formulations." 8 CIT at ——, 600 F.Supp. at 224.

Second, the effect of having section 1315(d) dependent on a finding by the Secretary would be the nullification of the Congressional purpose in certain cases:

To be sure, when the Secretary makes a finding that an established and uniform practice either exists or does not exist, that determination is within the Secretary's congressionally designated discretion. *See Washington Handle Co. v. United States,* 34 CCPA 80, 86 (1946). Such a determination cannot be disturbed by a court, except, perhaps, for an abuse of that discretion. *See Rank Precision Industries, Inc. v. United States,* 68 CCPA 78, 84, 660 F.2d 476, 480 (1981). In the absence of an affirmative or negative finding, however, the Court, when properly presented with the issue, may resolve it. In this connection, I will heed Chief Judge Markey's stern admonition in the *Ditbro Pearl* case that to hold otherwise "would render § 315(d) a nullity in the hands of a Secretary choosing to refrain from ever making a finding." *Ditbro Pearl Co. v. United States,* 62 CCPA 95, 97, 515 F.2d 1157, 1159 (Markey, C.J., concurring).

8 CIT at ——, 600 F.Supp. at 224.

force and effect." *Id.* at 412. The court did not discuss the necessity of a finding.

In many of the cases involving section 1315(d), the issue was whether or not some action by Customs constituted a finding. *See Heraeus-Amersil*, 8 CIT at —— n. 7, 600 F.Supp. at 224 n. 7. The actual existence of an established and uniform practice has nevertheless often been discussed by the courts to support holdings that the Secretary of the Treasury had not made a section 1315(d) finding. *E.g., Siemens America, Inc. v. United States*, 692 F.2d 1382 (Fed.Cir.1982), *aff'g* 2 CIT 136 (1981); *see Heraeus-Amersil*, 8 CIT —— n. 8, 600 F.Supp. at 224 n. 8. These discussions are helpful, however, in demonstrating what practices on the part of Customs are not established and uniform.

In *Siemens*, 100 entries of merchandise classified under a particular item number over possibly 2 years at a single port was not enough to create *de facto* an established and uniform practice. 2 CIT at 139. That controversy centered on a ruling letter pertaining to future importations of the plaintiff's merchandise. The plaintiff argued that the letter followed by a corresponding 2 years of uniform classifications constituted a uniform and established practice. Evidence showed, however, that entries just prior to the letter were liquidated under another item number, with protests denied after the letter, suggesting that Customs had not definitively decided on the correct classification. *See Siemens*, 692 F.2d at 1384 & n. *.

Similarly, in *Washington Handle Co. v. United States*, 34 CCPA 80, C.A.D. 346 (1946), like classification treatment of twenty-eight shipments over a 2-year period was not enough to create an established and uniform practice. Important to the court was the "considerable uncertainty" as to the proper classification during even the 2-year period. *Id.* at 86.

Prior discussions demonstrate that when Customs has not had a reasonable opportunity to investigate adequately the proper classification for a type of imported merchandise, an established and uniform prac-

tice will not arise in the interim. In *Naumes Forwarding Service v. United States*, 42 CCPA 110, C.A.D. 581 (1955), for example, Customs re-evaluated its method for determining the ratio representing the amount of imported concentrated lemon juice to natural juice. The court found that Customs was not required to follow the notice provisions of section 1315(d) when changing from a practice employed in liquidating entries over a 2-month period to one "based on 'the best current and authentic data.'" *Id.* at 112.

In the case now before the Court, nothing indicates that Customs was uncertain or was reconsidering the classification of fused quartz/fused silica prior to changing the classification of this merchandise. The Court is impressed that the practice existed for at least 10 years. Only upon reassignment of advisory classification responsibility did an import specialist initiate the change to classification under item 540.67. Unless Customs publishes notice of a contemplated change, the legislative objective under section 1315(d) of "lending certainty to the importing process" would clearly be circumvented. *See Heraeus-Amersil*, 8 CIT at ——, 600 F.Supp. at 223. The failure of Customs to provide notice is not excused by the omission of a "finding" regarding an established and uniform practice.

In adhering to the above conclusion, the Court does not endorse plaintiff's further contention that Customs is bound *ad infinitum* by a now discontinued "established and uniform practice" unless Customs publishes notice of the change in classification practice. Merchandise of entries subsequent to the change is not necessarily entitled to classification based on an administrative practice that has been discontinued and is therefore in retrospect no longer established and uniform. This result is different from that of the situation in which the importer bases its claimed classification on a *finding* by the Secretary of the Treasury that an established and uniform practice existed. *See Rank Precision Industries, Inc. v. United States*, 68 CCPA

78, 84, C.A.D. 1269, 660 F.2d 476, 480 (1981). Just as an importer's claim may be based on an *actual* uniform practice, so may the claim be extinguished by the discontinuance of such practice. Adoption of plaintiff's position could lead to the absurd result of allowing importers to go back through the records, find long-discontinued "established and uniform practices" and protest classifications accordingly, in total disregard of what everyone involved knows is the current position of Customs regarding the merchandise.

In the case before the Court, there is no question that plaintiff was on actual notice of the change in classification practice as of December 30, 1977. The subsequent group of importations involved in this action was not entered until April of 1981. Plaintiff is therefore not entitled to have these later entries of merchandise classified on the basis of a practice which Customs had discontinued and not followed for over 3 years.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted in part. In these circumstances where Customs displayed no ambivalence as to the classification of plaintiff's merchandise for 10 years in 300 liquidations, the Court holds that as a matter of law an established and uniform practice existed. For merchandise entered prior to the discontinuance of the practice, Customs' classification under a variant item number would have been valid only if preceded by publishing notice of the change pursuant to 19 U.S.C. § 1315(d). Customs may dispense with the publication requirement only after the practice has been discontinued and an importer is on actual or constructive notice of the discontinuance. The involved entries made before December 30, 1977, must accordingly be reliquidated under items 540.-11 or 540.41.

Regarding those entries occurring after December 30, 1977, plaintiff's motion for summary judgment is denied and defendant's cross-motion respecting plaintiff's claim under section 1315(d) is granted. As plaintiff was aware that the administrative practice upon which it had based its claimed classification of merchandise in the later entries had long been discontinued, the established and uniform practice claim as to these entries must be dismissed.

## ORDER

Upon reading and filing defendant's motion for amendment and/or rehearing (clarification) of the Memorandum Opinion and Judgment in Slip Op. 85–60 (June 6, 1985), plaintiff's response thereto, and upon all other papers and proceedings had herein, it is hereby

ORDERED, ADJUDGED and DECREED:

1. that defendant's motion for amendment and/or rehearing is granted;

2. that this Court's Memorandum Opinion and Judgment of June 6, 1985, Slip Op. 85–60 is vacated and set aside;

3. that plaintiff's motion for summary judgment is granted in part;

4. that defendant's cross-motion for partial summary judgment is granted in part;

5. that the Customs officials shall reliquidate the optical fused quartz or fused silica the subject of Court Numbers 80–9–01139–S and 81–1–00100 previously liquidated under item 540.67, TSUS, under either item 540.11 or 540.41, as modified by T.D. 68–9, TSUS, as appropriate, and refund to plaintiff the excess duties paid together with interest as provided by law; and

6. that the established and uniform practice claim regarding the merchandise subject of Court Number 82–9–01243–S be dismissed.

The issues involved in this determination include a controlling question of law with respect to which there is a substantial ground for difference of opinion and an immediate appeal from the order may ma-

terially advance the ultimate termination of the litigation.