Slip Op. 05-5

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

|  |  |  |
|---|---|---|
| | : | |
| Weslo, Inc., | : | |
| Plaintiff, | : | |
| | : | **Court. No. 95-01332** |
| v. | : | |
| United States, | : | |
| Defendant. | : | |
| | : | |

[Plaintiff's Motion for Summary Judgment denied; Defendant's Cross-Motion for Summary Judgment granted.]

Decided: January 24, 2005

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Steven P. Florsheim), (Robert F. Seely),* for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *(Barbara S. Williams*), Attorney in charge, International Trade Field Office, Civil Division, Department of Justice, Civil Litigation Branch; *Beth C. Brotman,* Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

Before the court are Cross-Motions for Summary Judgment from Plaintiff Weslo Inc. ("Weslo") and the United States Department of Customs and Border Protection ("Customs" or "Defendant" or "the government"). This opinion addresses the remaining three of the original four claims asserted by Plaintiff.[1] Weslo requests that the court order Customs to reliquidate the

---

[1] This Court addressed Plaintiff's 19 U.S.C. § 1625(c) claim and severed and dismissed seven entries covered by the original action in *Weslo Inc. v. United States*, 25 CIT 561, 167 F.

subject entries at a duty-free rate. Plaintiff bases this request on what it argues was Customs' arbitrary, capricious and illegal refusal to either liquidate the entries as entered (duty-free) or to delay the effective date of ruling letter HQ 089891 that applied a 4.6% *ad valorem* duty rate to the subject merchandise. Defendant argues it was not required to apply the duty-free rate because no established and uniform practice ("EUP") of liquidating the subject merchandise at the duty-free rate existed, or alternatively, if an EUP did exist, it was terminated prior to the entry of Weslo's merchandise. Defendant also argues that it did not abuse its discretion when denying Plaintiff's request to delay the effective date of ruling letter HQ 089891 because Plaintiff failed to meet the requirements of the applicable regulation, 19 C.F.R. § 177.9(e).

This court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1996) as Plaintiff's valid protests were denied by Customs. Summary judgment is appropriate because no genuine issues of material fact exist. USCIT R. 56(d). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986). Because the court finds that any established and uniform practice of liquidating the subject merchandise at a duty-free rate was terminated by the HTSUS, and that Customs did not abuse its discretion in deciding not to delay the effective date of its ruling letter, as explained below, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion is granted.

## I.      Background

Plaintiff imported merchandise consisting of electronic speedometer/tachometers (other than bicycle speedometers), which were then incorporated into stationary exercise equipment

---

Supp. 2d 1348 (2001).

such as treadmills.  Plaintiff cites to a long history of having its own or similar merchandise liquidated by Customs at a duty-free rate, as far back as June 1980.  Prior to the adoption of the HTSUS a number of Plaintiff's entries were imported and classified under TSUS 711.98 ("other speedometers and tachometers"), a duty-free provision.[2]  Plaintiff also misclassified a number of other entries, was charged a duty, protested, and was able to reclassify those entries under the duty-free classification.  *Pl.'s Ex.* 2.  After the adoption of the HTSUS, Plaintiff was advised by its Customs broker that its imported parts would be classifiable under a dutiable provision of the HTSUS.  Plaintiff then filed 27 entries of the subject merchandise under HTSUS subheading 9017.80.00 ("other measuring instruments"), a dutiable provision, and Customs liquidated these entries as entered.  Plaintiff also claims that it was contacted by the Customs Import Specialist at the port of Los Angeles and instructed that the electronic speedometers/tachometers for exercise equipment should be entered under HTSUS subheading 9029.20.40, a duty free provision.  *Pl.'s Ex.* 4.  Plaintiff thereafter protested the classification of its 27 entries, claiming that correct classification was 9029.20.40 HTSUS, a duty-free provision covering "other speedometers and tachometers," which Customs then approved.  *Pl.'s Ex.* 3.  Plaintiff states that it then, between January 1989 and December 1990, filed 181 entries that were classified under HTSUS subheading 9029.20.40, all of which were liquidated by Customs. *Pl.'s Ex.* 5.

In October 1990, however, Plaintiff received Notices of Action from Customs indicating that in the absence of further information, certain models including those at issue here would be

---

[2] Both the harmonized tariff schedules of the United States (HTSUS) and the tariff schedules of the United States (TSUS) are classification schemes for identifying merchandise by its characteristics so that the proper duty rate can be assessed.  The HTSUS replaced the TSUS effective January 1, 1989.

liquidated under a dutiable subheading. *Pl.'s Ex.* 5. Also, on January 7, 1991, Customs issued

Notices of Proposed Action to Plaintiff stating that merchandise similar to that at issue in this

case was misclassified under 9029.20.40. Soon thereafter, Plaintiff began to import the specific

merchandise at issue in this action. Between January 1991 and September 1993, Plaintiff made

234 entries.[3] Plaintiff made 10 additional entries between December 9 and 15, 1993. In June

1991, Plaintiff requested a binding ruling that its imported electronic monitoring equipment for

exerciser equipment other than bicycles (model numbers ECT-61, ECT-50, ECT-12) was

classifiable under HTSUS subheading 9029.20.40. Pending this ruling request, Customs

suspended liquidations of Plaintiff's entries of the subject merchandise. On September 15, 1993

Customs issued HQ 089891 in response to Plaintiff's request, ruling that the subject merchandise

was classifiable under HTSUS subheading 9506.91.00 ("Articles and equipment for general

physical exercise, gymnastics or athletics; parts and accessories thereof "), dutiable at a rate of

4.64 % *ad valorem*. On April 1, 1994, Customs liquidated the suspended entries, assessing the

4.64 % *ad valorem* duty rate. Weslo protested this action and Customs denied its protests.

## II.    Discussion

Plaintiff argues that when it entered the subject merchandise, Customs had an established

and uniform practice of classifying the imported speedometers and tachometers for exercise

equipment under a duty-free provision of the TSUS and the corresponding provision of the

HTSUS. Plaintiff further argues that Customs' issuance of HQ 089891 terminated the EUP,

subjecting this reclassification ruling to the notice requirements of 19 U.S.C. 1315(d) and 19

---

[3] Seven entries were subsequently dismissed in *Weslo*, 167 F. Supp. 2d at 1353.

C.F.R. 177.10(c)(1). Thus, Plaintiff argues that the higher duty rates established by HQ 089891 should not have been applied to its suspended entries. This court reviews Customs' decision to apply the higher duty rates according to a clearly erroneous standard. *Hasbro Industries v. United States*, 879 F.2d 838 (Fed. Cir. 1989). Alternatively, Plaintiff argues that Customs abused its discretion under 19 C.F.R. 177.9(e) by not delaying the effective date of HQ 089891 long enough to liquidate Plaintiff's merchandise duty-free as entered. Where an agency interprets its own regulations, the APA provides that agency determinations shall be held invalid where they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. Under this standard, it is clear that the agency's determination cannot be upheld where it fails to acknowledge applicable law or to demonstrate how it reaches its conclusions of law. *See Burlington Truck Lines Co. v. United States*, 371 U.S. 156, 168, 9 L. Ed. 2d 207, 83 S. Ct. 239 (1962) (holding that an agency determination must show a "rational connection between the facts found and the choice made").

A.      **Liquidation Pursuant to an Established and Uniform Practice**

Plaintiff's first claim turns on whether an established and uniform practice of classifying Plaintiff's merchandise under a duty-free provision existed at the time Plaintiff entered the subject merchandise. Plaintiff argues that if an EUP did exist, pursuant to 19 U.S.C. 1315(d), Customs would have been required to liquidate the subject entries as entered. Section 1315(d) sets out the effective date of administrative rulings that result in higher duty rates. It states that

> No administrative ruling resulting in the imposition of a higher rate
> of duty or charge than the Secretary of the Treasury shall find to have
> been applicable to imported merchandise under an established and
> uniform practice shall be effective with respect to articles entered for

consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling . . . .  This subsection shall not apply with respect to increases in rates of duty resulting from the enactment of the Harmonized Tariff Schedule of the United States to replace the Tariff Schedules of the United States.

19 U.S.C. § 1315(d).  The statute on its face bars the imposition and collection of increases in

duties when an EUP exists taxing the particular imported goods at a lower rate, unless the higher

rate has been fixed by an administrative ruling, notice of which has been given as provided in the

statute.  Such notice, however, is not required when the increased rate results from the enactment

of the HTSUS.  The corresponding regulatory provision provides

> (c) Changes of practice.  Before the publication of a ruling which has the effect of changing an established and uniform practice and which results in the assessment of a higher rate of duty within the meaning of 19 U.S.C. 1315(d), notice that the practice (or prior ruling on which that practice was based) is under review will be published in the Federal Register and interested parties will be given an opportunity to make written submissions with respect to the correctness of the contemplated change . . . .

> (e) Effective dates. Except as otherwise provided in § 177.12(e) or in the ruling itself, all rulings published under the provisions of this part will be applied immediately.  If the ruling involves merchandise, it will be applicable to all unliquidated entries, except that a change of practice resulting in the assessment of a higher rate of duty or increased duties shall be effective only as to merchandise entered for consumption or withdrawn from warehouse for consumption on or after the 90th day after publication of the change in the Federal Register.

19 C.F.R. 177.10.  Thus, where an established and uniform practice exists, Customs must publish

Federal Register notice before the EUP is altered to effect a higher rate of duty than was levied

under the EUP.  Furthermore, where an EUP is altered to effect a higher rate of duty, Customs'

ruling shall not apply to merchandise entered for consumption before the 90th day after Federal Register publication. Plaintiff argues that an EUP of applying a duty-free rate to the subject merchandise existed until this practice was altered by HQ 089891, which applied a higher rate of duty. Thus, Plaintiff argues that HQ 089891 cannot apply to the entries at issue in this action because they were entered for consumption before the 90th day after Federal Register publication.

Traditionally, an EUP is established by a finding of the Secretary of the Treasury that such a practice exists. In *Heraeus-Amersil, Inc. v. United States*, this Court held that the plaintiff could show an established and uniform practice by actual uniform liquidations, even though the Secretary of the Treasury had made no "finding" that such a practice existed. 8 CIT 329, 335, 600 F. Supp. 221, 226 (1984). The essence of such a *de facto* EUP is a determination by the court that Customs consistently classified a specific type of merchandise under a particular category of the tariff schedules prior to some distinct point in time. *See Atari Caribe, Inc. v. United States*, 16 CIT 588, 595, 799 F. Supp. 99, 106-07 (1992).

However, unlike in situations where the Secretary of the Treasury has made a finding that an established and uniform practice existed, an importer's claim based on an actual uniform practice may be extinguished by actual notice of the discontinuance of such practice instead of publication in the Federal Register. *See Heraeus-Amersil v. United States*, 9 CIT 412; 617 F. Supp. 89, 95 (1985) *aff'd* 795 F.2d 1575 (Fed. Cir. 1986) ("Adoption of plaintiff's position [that Customs was bound *ad infinitum* by a then-discontinued EUP unless Customs published notice of the change in classification practice] could lead to the absurd result of allowing importers to

go back through the records, find long-discontinued EUPs and protest classifications accordingly . . . .").   Moreover, as the statute itself indicates, "[section 1315(d)] will not apply with respect to increases in rate of duty *resulting from* the enactment of the HTSUS to replace the TSUS."  19 U.S.C. § 1315(d) (emphasis added).  As interpreted in *Hemscheidt Corp. v. United States*, the words "resulting from" require a causal link between the enactment of the HTSUS and the new classification.  72 F.3d 868, 871-72 (Fed. Cir. 1995).  Thus, where the enactment of the HTSUS requires an increase in the duty rate, the timing and notice requirements of section 1315(d) do not apply.

In the case at hand, Weslo points to Customs' history of liquidating or reliquidating the merchandise at issue or similar merchandise at the duty-free rate in support of its claim that an EUP existed until HQ 089891 was issued.  Customs argues that no such uniform practice existed, that Weslo had notice that its merchandise was not classifiable under a duty-free provision before the merchandise at issue was imported, and finally that the enactment of the HTSUS mandated a new, dutiable classification.

The court notes from the outset that if, as Weslo argues, a *de facto* EUP existed during the 1980s, it must have survived the enactment of the HTSUS in order to be applicable to the entries at issue in this case.  Assuming, *arguendo*, that Customs did have an established and uniform practice of liquidating Weslo's subject merchandise at a duty free rate, the court finds that this EUP was terminated well before Plaintiff imported the merchandise at issue in this action.  Specifically, as Defendant points out, Legal Note 3 to Chapter 95 of the HTSUS states that

> . . . parts and accessories which are suitable for use solely or principally with articles of this chapter are to be classified with those articles.

HTSUS Ch. 95 Notes, N.3.  The merchandise at issue in this action includes speedometers and tachometers for use in exercise equipment other than bicycles, and is therefore described by subheading 9506.91.00 ("Articles and equipment for general physical exercise, gymnastics or athletics; parts and accessories thereof") as parts of sports equipment.  Thus, according to Note 3, the subject merchandise cannot be classified under subheading 9029.20.40 ("Other speedometers and tachometers"), which is the successor tariff provision for TSUS item 711.98.20.  *See* Continuity of Import And Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System, Report to the President on Investigation No. 332-250 Under Section 332 of the Tariff Act of 1930, USITC Pub. 2051, p. 297.  By contrast, the TSUS did not contain a comparable note.  Therefore, while the subject merchandise was correctly classified under the TSUS subheading 711.98 ("Other speedometers and tachometers"), a duty-free provision, the enactment of the HTSUS required that the subject merchandise be classified under subheading 9506.91.00 by virtue of Legal Note 3 to Chapter 95 of the HTSUS, as Weslo's entries are comprised of speedometers and tachometers that are suitable for use solely or principally with exercise equipment.  Because the increase in rate of duty applicable to Weslo's merchandise was a direct result of the enactment of the HTSUS to replace the TSUS, section 1315(d) and the corresponding regulations are inapplicable.

**B.      Customs' Discretion to Delay the Effective Date of HQ 089891**

Weslo also claims that Customs abused its discretion in not delaying the effective date of

HQ 089891 pursuant to 19 C.F.R. § 177.9(e). This regulation provides for a party affected by a

Customs ruling letter to request that Customs delay the effect of that ruling letter for a period of

up to 90 days. Specifically, it states

> Effect of ruling letters.
> (e) Ruling letters modifying past Customs treatment of transactions not covered by ruling letters – (1) General. The Customs Service will from time to time issue a ruling letter covering a transaction or issue not previously the subject of a ruling letter and which has the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions of either the recipient of the ruling letter or other parties. Although such a ruling letter will generally be effective on the date it is issued, the Customs Service may, upon application by an affected party, delay the effective date of the ruling letter, and continue the treatment previously accorded the substantially identical transaction, for a period of up to 90 days from the date the ruling letter is issued.
>
> (2) Applications by affected parties. In applying to the Customs Service for a delay in the effective date of a ruling letter described in paragraph (e)(1) of this section, an affected party must demonstrate to the satisfaction of the Customs Service that the treatment previously accorded by Customs to the substantially identical transactions was sufficiently consistent and continuous that such party reasonably relied thereon in arranging future transactions. The evidence of past treatment by the Customs Service shall cover the 2-year period immediately prior to the date of the ruling letter, listing all substantially identical transactions by entry number . . . the quantity and value of merchandise covered by each such transaction . . . and the dates of final action by the Customs Service. The evidence of reliance shall include contracts, purchase orders, or other materials tending to establish that the future transactions were arranged based on the treatment previously accorded by the Customs Service.

19 C.F.R. § 177.9(e) (1993). The court notes that on its face, the regulation provides a wide

degree of discretion to Customs, stating that it "may" delay the effective date of the ruling letter,

and that an affected party must demonstrate "to the satisfaction of the Customs Service" that the

treatment previously afforded was sufficiently consistent and continuous. *Id.* Customs, however,

must be able to show a rational connection between the facts found and its ultimate decision. *See*

*Burlington Truck Lines Co.*, 371 U.S. at 168.

Weslo argues that it relied on what it claims was Customs consistent liquidation or

reliquidation of the subject merchandise or substantially similar merchandise during the years

leading up to the issuance of HQ 089891. Weslo also cites to Customs' treatment of similar

products produced by Weslo's competitors and to the advice offered by Customs import

specialists as evidence that it relied on the expectation of duty-free treatment for its parts until

HQ 089891 was issued. Additionally, Weslo argues that by denying its request for a delay,

Customs effectively singled out its subject entries for "retroactive application" of the new ruling.

Customs responds by arguing that HQ 089891 cannot be considered a ruling letter as

described by 12 C.F.R. § 177.9(e) because both HQ 087550 (February 28, 1991) and NY 836900

(March 13, 1989) had already addressed the issue covered by HQ 089891, and because

HQ089891 did not modify the treatment previously accorded by Customs to substantially

identical transactions. Customs also argues that in early 1989, there was no clear practice of

classification of the subject merchandise; that in early 1991 Weslo was issued a Notice of Action

indicating that classification under the duty-free provision was incorrect; and that Weslo failed to

provide any contracts, purchase orders, or other evidence establishing that it had entered into

unalterable contracts based on its reliance of duty-free treatment of its goods.

The court concludes that in the two-year period immediately preceding HQ 089891, the

proper classification of Weslo's products was, at best, unclear. While Customs had liquidated or

reliquidated Weslo's merchandise a number of times prior to HQ089891, 19 C.F.R. § 177.9(e) directs Customs to focus exclusively on the two-year period preceding the ruling letter. By this time, Weslo had numerous indications that its goods were not properly classified as duty-free, including the proposed Notice of Action issued in January 1991 and the enactment of the HTSUS, as discussed above. Furthermore, although Weslo provided the sworn deposition testimony of its Import Manager, Jeffrey Carmignani, it failed to provide specific documentary evidence of reliance in the form of contracts and purchase orders. Although this court may be sympathetic to Weslo's claim of reliance, the regulation clearly gives Customs' discretion to determine, to its own satisfaction, whether Weslo reasonably relied on the past treatment in "arranging future transactions." 19 C.F.R. § 177.9(e). Furthermore, where, as Customs has done here, the agency can show even a rational connection between the facts found and its decision, the court must defer to the agency's decision.

## C.    Conclusion

Because the increase in duty rates, from duty-free to 4.64% *ad valorem*, directly resulted from the enactment of the HTSUS to replace the TSUS, Plaintiff is unable to rely on the notice, timing and publication provisions of 19 U.S.C. § 1315(d) or the corresponding regulation, 19 C.F.R. 177.10. Furthermore, because the court finds that Customs' decision not to delay the effect of HQ 089891 pursuant to 19 C.F.R. § 177.9(e) was not arbitrary, capricious or an abuse of discretion, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

Dated    January 24, 2005                                             /s/ Judith M. Barzilay
               New York, NY                                               Judith M. Barzilay, Judge